[No. B055902. Second Dist., Div. Five. Feb. 6, 1992.]

DOUGLAS McMILLEN, Plaintiff and Appellant, v.
CIVIL SERVICE COMMISSION OF THE CITY OF LOS ANGELES,
Defendant and Respondent.

## COUNSEL

Marr & Marchant, Cecil Mar and Diane Marchant for Plaintiff and Appellant.

James K. Hahn, City Attorney, Frederick N. Merkin, Assistant City Attorney, and Molly Roff-Sheridan, Deputy City Attorney, for Defendant and Respondent.

## OPINION

**BOREN, J.**—Appellant, an ambulance driver, was disciplined for failing to meet body weight standards promulgated by the Los Angeles City Fire Department. His petition for relief from the imposition of discipline was denied by the trial court. On appeal, he contends that (1) there was no evidence his weight interfered with his ability to perform his duties, therefore there was no just cause for discipline, (2) his right to challenge the department's weight standards was not waived by his union's written agreement to them and (3) the city is required to apply its rules regarding employees whose medical conditions impair their effectiveness or endanger public safety or welfare rather than treat this as a disciplinary matter. We conclude that the trial court correctly granted judgment in favor of respondent.

## FACTS

Appellant Douglas McMillen was hired in 1974 as an ambulance driver for the Los Angeles Fire Department (the department). The department prescribes height and weight limitations on its employees as part of its requirement that they be physically fit. The maximum allowable weight for a person five feet eight inches tall, McMillen's height, was one hundred seventy-one pounds.[1]

The department had a weight control program which McMillen entered into in 1977, when his weight reached 202 pounds. During the next 11 years,

---

[1]Over time, the department increased McMillen's maximum allowable weight to 181 pounds.

while he was a member of the weight control program, McMillen's weight was consistently monitored, and he was required to lose 2 pounds per month. Nevertheless, his weight fluctuated between a minimum of 171 and a maximum of 213 pounds. He was disciplined twice in 1981, twice in 1982, and once in 1987, for a total of 50 days' suspension without pay, as a result of his failure to meet his weight goals. McMillen did not challenge these suspensions. He did not feel his weight hindered his job performance.

Finally, in December of 1988, the department threatened a 60-day suspension after McMillen weighed in at 204 pounds. McMillen, through his union, the United Paramedics of Los Angeles (the union), challenged the proposed discipline, arguing that there was no evidence that his weight affected his job performance. The discipline was ultimately reduced to suspension for 12 days without pay in March of 1989 due to McMillen's "good attitude." McMillen appealed this penalty to respondent Civil Service Commission (the commission), which upheld the suspension in December of 1989.

At the administrative hearing, the department presented evidence stating that weight management programs were appropriate for public safety employees such as paramedics because studies conducted outside the department showed that excess fat could adversely affect their agility and ability to lift and climb, may cause fatigue in cases of acute obesity, or increase the risk of metabolic disease and back injury. Ambulance drivers are required to lift several hundred pounds of dead weight when carrying patients in stretchers or heavy equipment, which places heavy stress on the drivers' backs, shoulders and knees. Because sudden incapacitation of an ambulance driver could be life-threatening, the standards governing this job call for employees who are not susceptible to injury and who are not overweight, as this could impair job performance.

Following the commission's decision, McMillen filed a petition for a writ of mandate in the superior court. He argued that the commission failed to apply properly both its own rules regarding employee medical problems and city charter provisions regarding disciplinary procedures. The court denied McMillen's petition in a judgment filed November 20, 1990.

In addition to pursuing his administrative remedies and relief in state court, McMillen and the union also filed a suit in federal court seeking to have the department's body weight limitations declared unconstitutional. The district court granted summary judgment in favor of the city, a decision

which was affirmed by the Ninth Circuit Court of Appeals in an unpublished opinion filed on June 25, 1991.[2]

## DISCUSSION

### 1. *Standard of Review*

■ Discipline imposed on city employees affects their fundamental vested right in their employment. Accordingly, the trial court was required to exercise its independent judgment and determine whether respondent's findings were supported by the weight of the evidence when it reviewed respondent's decision to impose disciple on McMillen. (Code Civ. Proc., § 1094.5, subd. (c); *Nicolini v. County of Tuolumne* (1987) 190 Cal.App.3d 619, 625 [235 Cal.Rptr. 559]; *Schmitt v. City of Rialto* (1985) 164 Cal.App.3d 494, 500 [210 Cal.Rptr. 788].) On appeal, we determine whether the trial court's findings are supported by substantial evidence on the whole record. (*Id.* at p. 501.)

### 2. *Effect of Departmental Weight Standards*

The department disciplined McMillen for his violation of departmental rules and regulations. Specifically, the basis of the discipline was departmental rule 12(i), which requires that members of the fire department "[k]eep themselves in proper physical condition necessary to perform the duties of their position," and an operations manual provision requiring that employees enrolled in the department's weight control program lose at least two pounds per month. McMillen argues that the findings under these rules and regulations do not satisfy city charter section 112, which provides that permanent city employees may not be discharged or suspended except for cause.[3] (*Burrell v. City of Los Angeles* (1989) 209 Cal.App.3d 568, 575 [257 Cal.Rptr. 427].)

---

[2]We have taken judicial notice of the federal case to determine whether it has any res judicata effect on the case at bar. (Cal. Rules of Court, rule 977.) The Ninth Circuit determined that the department's weight control program minimally infringes upon its employees' privacy interests, and that this privacy intrusion is justified by the department's responsibility to ensure employee fitness to protect public safety and welfare. The court also found that the department's weight program does not violate the due process and equal protection rights of its employees.

[3]Section 112 reads, "(a) Any board or officer having the power of appointment of officers, members and employees in any department of the government of the city shall have the power to remove, discharge or suspend any officer, member or employee of such department; but no person in the classified civil service of the city, other than an unskilled laborer employed by the day, shall be removed, discharged or suspended except for cause, which shall be stated in writing by the board or officer having the power to make such removal, discharge or suspension, and filed with the Board of Civil Service Commissioners . . . ."

McMillen maintains that the most the department can offer is a generalized theory regarding the effect of obesity on job performance. Absent proof that *his* weight actually interfered with *his* job performance, his argument continues, there was no just cause for his suspension. To this, respondent replies that McMillen's lack of fitness may be inferred from his failure to comply with the department's weight standards, and that unfit employees endanger public safety. Discipline is therefore warranted to compel compliance with accepted safety standards, respondent reasons.

In essence, McMillen's complaint is that his employer is unreasonably discriminating against him or punishing him because of his weight even though he does not feel his weight in any way hampers his effectiveness or public safety. ■ Under state law, an employee's inability to perform a particular job efficiently and safely due to a physical handicap or impairment is recognized as a legitimate basis for job discrimination. (Gov. Code, § 12940, subd. (a)(1); *American National Ins. Co.* v. *Fair Employment & Housing Com.* (1982) 32 Cal.3d 603, 609-610 [186 Cal.Rptr. 345, 651 P.2d 1151] [finding high blood pressure is a "physical handicap," but that this handicap could not be used as a basis for job discrimination unless it posed a present disability or risk].) Employee height and weight limitations may be prescribed by an employer where there is a rational basis for such limitations, as shown by supportive analytical factual data rather than stereotypical generalizations. (*Hardy* v. *Stumpf* (1974) 37 Cal.App.3d 958, 962-965 [112 Cal.Rptr. 739].) These rules apply to both government employees and employees in the private sector. (Gov. Code, § 12926, subd. (c).)

■ The question thus presented is whether or not there was substantial evidence, based on the entire administrative record, from which the trial court could conclude that the department's weight standards are reasonably supported by factual data, and that McMillen's failure to meet these standards endangered his health and safety or the health and safety of others.

The evidence presented at the administrative hearing supports the trial court's conclusions. The undisputed facts showed that ambulance drivers are required to lift and carry extremely heavy weights, and occasionally to do so on stairways. Studies cited by several expert witnesses established that excess fat compromises an emergency worker's strength, agility, and ability to lift and climb. There was also substantial testimony concerning the reasonableness of the weight requirements mandated by the department, and proof that McMillen did not meet these standards. McMillen did not present any evidence contradicting the findings contained in the studies relied upon by the department.

In sum, there is substantial evidence in the record establishing the reasonableness of the department's weight standards as a means of ensuring the

safety of its employees and members of the public. McMillen's failure to comply with these standards posed a risk which, based on the studies the department had before it, could not be countenanced. We agree with the trial court's observation that the department need not wait for disaster to strike before taking action: the department owes a duty to the public and its employees affirmatively to avert disaster, rather than simply wait and hope it does not occur. Accordingly, there was just cause for disciplining McMillen as a means of compelling his future compliance with recognized safety standards.

### 3. *Failure to Apply Civil Service Rules*

McMillen argues that the department erred by applying disciplinary rules to him when it should have applied civil service rules for removing employees with medical or physical problems. These rules aim to "[e]nsure that each employee is able to perform the essential duties of the position to which the employee is assigned without undue hazard to the employee or others." (Civil Service Rule 13.2.) To achieve this goal, the rules provide that employees who are believed to suffer from a medical condition which impairs their effectiveness or endangers the employee or the public may be medically examined, and either reassigned or rehabilitated. (Civil Service Rules 13.9 and 13.10.) The civil service rules were not stringent enough for the department, which assumed control over the issue of body weight by making compliance with its weight control program a condition of employment and permitting discipline for employees who failed to meet the minimum monthly weight loss requirement of two pounds.

Although McMillen claims the department's adoption of its weight control program was not negotiated by his union, his claim is belied a 1983 letter agreement between the union and the department which states that the department's weight control program is "necessary and beneficial," and permits union members with weight problems to be enrolled in it by their chief officers, as provided for in the department's manual of operations.[4] McMillen does not dispute that his union and the department may negotiate and reach agreements on matters which affect wages, hours and other terms and conditions of employment. The agreement of the exclusive bargaining representative binds the employee. (Gov. Code, § 3500 et seq.; *Andrews* v. *Board of Supervisors* (1982) 134 Cal.App.3d 274, 279-280 [184 Cal.Rptr.

---

[4]The letter of agreement, in its entirety, reads, "The parties agree that the Department's Weight Control Program is both necessary and beneficial. Therefore, the Union agrees to support the modification to the Weight Control Program allowing any Chief Officer to enter a member into the Program through application of the Wright-Wilmore Method, as explained in 3/5-16.96 of the Department's Physical Fitness Manual."

542].) There is no evidence that the letter agreement between the union and the department was ever rescinded.

In light of the union's agreement to the weight control program which the department made a condition of employment, McMillen is foreclosed from arguing that this condition of employment should not have been applied to him, and that he should have been treated under an entirely different set of rules. The union may agree to the applicability of disciplinary rules that are different from the ones which would ordinarily apply so long as the agreed-to rules do not deprive the union members of their right to a hearing on the charges against them, or otherwise waive the members' due process rights. (*Phillips* v. *State Personnel Bd.* (1986) 184 Cal.App.3d 651, 659-660 [229 Cal.Rptr. 502].) The departmental disciplinary rules in this case did not deprive McMillen of his due process right to a hearing before an examiner and an appeal to the commission.

In light of our conclusion, we need not reach any other waiver issues relating to 1983 letter of agreement or McMillen's failure to challenge the suspensions he received in 1981, 1982 and 1987. We agree with the trial court, however, that the union's approval of the weight control program in the 1983 letter of agreement is additional evidence that the department's weight standards are reasonable.

### DISPOSITION

The judgment is affirmed.

Turner, P. J., and Grignon, J., concurred.