Filed 5/27/15  Stinson v. LA County Civil Service Com. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DEXTER STINSON, | B253372 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS134549) |
| v. | |
| LOS ANGELES COUNTY CIVIL SERVICE COMMISSION, | |
| Defendant. | |
| LOS ANGELES COUNTY PROBATION DEPARTMENT, | |
| Real Party in Interest and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joanne O'Donnell, Judge.  Affirmed.

Romero Law, Alan J. Romero, Elliot A. Rosenberger, for Plaintiff and Appellant.

No appearance for Defendant.

Law Offices of William Balderrama, William Balderrama and Daniel C. Carmichael, III, for Real Party in Interest and Respondent.

_____

Plaintiff and appellant Dexter Stinson was discharged as a deputy probation officer with the Los Angeles County Probation Department for excessive use of force on a minor. Stinson filed an administrative appeal with the Los Angeles County Civil Service Commission (Commission), which upheld his discharge. Stinson then filed a petition for writ of mandate, seeking to overturn the Commission's ruling. (Code Civ. Proc., § 1094.5.) In this appeal from the judgment of denial of the mandate petition, Stinson contends the Probation Department's withholding of crucial materials constituted a violation of his *Skelly*[1] due process rights. Specifically, Stinson argues the Probation Department failed to provide him with a copy of a surveillance video of the incident that led to his discharge, the Residential Treatment Services Bureau (RTSB) Safe Crisis Management policy, and his training logs. Stinson further contends his discharge was not an appropriate penalty. We reject Stinson's contentions and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

**Background**

Stinson started his employment with the Probation Department in 1994. He was promoted to Deputy Probation Officer I in 1996, and to Deputy Probation Officer II in 1999. At the time of the incident which led to his discharge, Stinson was assigned to Camp Scobee, one of six camps at Challenger Memorial Youth Center. Camp Scobee is part of the Probation Department's RTSB.

In November 2004, the Probation Department discharged Stinson for excessive use of force on a minor. After Stinson appealed to the Commission, a hearing officer determined that Stinson had not committed all of the misconduct alleged, but had used an inappropriate restraint and some excessive force on the minor. The hearing officer did

---

[1] *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194 (*Skelly*).

2

not believe that the discharge was an appropriate penalty and recommended a 30-day suspension.  That recommendation was adopted by the Commission.[2]

Stinson received performance evaluations that rated him "very good" in the two rating periods prior to the incident leading to his termination.  The most recent performance evaluation given to Stinson after the incident praised him for being "able to de-escalate volatile situations that may arise in the dorm."

**The Incident**

Stinson was conducting showers for a group of minors at Camp Scobee during the evening of July 3, 2009.  After the minors exited the showers, they were given a "shower roll," containing a T-shirt, underwear, and socks.  When the minors finished showering, they were required to go to their beds, put on their shower roll, and get between the sheets.  Deputy Probation Officer Roger Robinson was in the control center while Stinson was conducting the showers.  Robinson's job was to observe the minors in, and exiting from, the showers.  Any problems with clothing were handled after all minors have showered.

After minor Naim A. returned from the shower with his shower roll and went to his bed, Stinson observed Naim rip up his underwear and throw it on the ground.  Naim then sat on his bed with a towel around his waist.  Stinson told Naim to get between the sheets.  Naim responded, "I don't have any fucking underwear."  Naim did not comply after Stinson repeated his instruction.  The other minors continued the shower movement without incident.

After Naim continually refused to obey his instructions, Stinson walked over from the other side of the dorm to where Naim's bed was located.  When Stinson reached

---

[2] The Probation Department did not incorporate the Commission's action into Stinson's personnel file until February 10, 2010.

Naim's bed, he told Naim to leave the bed area and go to a nearby table to cool off. Naim responded, "Fuck that. I'm not doing anything until I get some underwear." Naim stood up, pulled a pair of shorts on over the towel he was wearing, and then sat back down on his bed. As Naim started to get up from the bed, Stinson pulled pepper spray out of his pocket. Naim sat back down. Stinson then told Naim to stand up and put his hands behind his back so he could put handcuffs on him. Naim responded, "Fuck that. I'm not doing anything." Stinson then gave Naim a pepper spray warning. When Naim did not comply, Stinson gave him a second warning and pointed to the ground. After Naim failed to respond, Stinson sprayed Naim with a two-second burst of pepper spray and took Naim down to the ground.

Robinson noticed the disturbance and quickly approached to assist Stinson. Robinson restrained another minor, Max G., who had attempted to interfere. Another officer removed Max from the dorm. Stinson placed his foot on Naim's back to keep him immobile, eventually placing Naim in handcuffs. Stinson continued the shower movement with the other minors. Ten minutes after deploying the pepper spray, Stinson escorted Naim out of the dorm to be decontaminated by the nurse.

The Probation Department's Child Abuse Special Investigations Unit (CASIU) conducted an investigation regarding allegations that Stinson had engaged in excessive force against Naim. As part of its investigation, CASIU interviewed Naim and Stinson, as well as numerous other minors and staff. CASIU determined that the standard procedures for pepper spray were not adhered to and Stinson "acted inappropriately and used excessive and unnecessary use of force on . . . Naim."

**Notice of Intent to Discharge and Applicable Probation Department Policies**

By letter dated March 29, 2010, the Probation Department notified Stinson of its intent to discharge him from his position as a Deputy Probation Officer II. The notice explained the proposed action was based on (1) misuse of force, (2) falsifying a report, (3) untruthful statements during an official investigation, (4) inappropriate and

4

unprofessional conduct, and (5) failure to exercise sound judgment. The notice stated that the discharge was based on Stinson's violation of Probation Department Policy Manual Nos. 15.1 (Employee Conduct) and 15.7 (Corporal Punishment), as well as Probation Department Directive Nos. 1094 (Safe Crisis Management) and 1211 (Employee Cooperation Related to Administrative Hearings and Departmental Investigations). The letter outlined Stinson's *Skelly* "right to respond either orally or in writing to the charges contained in [the] letter," and review "[w]ritten materials, reports, and documents, upon which [the] action is based."

In an April 29, 2010 letter, Stinson's counsel requested materials from the Probation Department that were not provided with the *Skelly* packet, which included a surveillance video of the July 3, 2009 incident. On May 12, 2010, the Probation Department provided Stinson with the opportunity to view the video before the *Skelly* meeting with his counsel and a Probation Department representative present. On May 28, 2010, the *Skelly* manager met with Stinson and his counsel.

By letter dated June 29, 2010, the Probation Department informed Stinson he was discharged from his position of Deputy Probation Officer II and from Los Angeles County service effective July 6, 2010. In making its decision, the Probation Department relied heavily on the surveillance video. It also considered its Guidelines for Discipline, Stinson's July 3, 2009 Physical Intervention Report (PIR),[3] CASIU's report, and witness interviews. The Probation Department reviewed Stinson's performance evaluations, past discipline, and his training logs. The notice of discharge advised Stinson of his right to appeal his termination and to request a hearing from the Commission. On July 22, 2010, Stinson appealed and requested a hearing.

---

[3] The Probation Department requires a deputy probation officer to prepare a PIR whenever that officer has a physical altercation with a minor.

5

**The Administrative Proceedings**

On September 29, 2010, the Commission defined the issues for the parties: "1. Are the allegations contained in the [Probation] [D]epartment's letter of June 29, 2010, true? [¶] 2. If any or all are true, is the discipline appropriate? [¶] 3. Was there compliance with the requirements of Skelly rights due process? [¶] 4. If not, what is the remedy." After five days of evidentiary hearings in February and April 2011, the hearing officer issued his findings of fact, conclusions of law, and recommended decision. The hearing officer's findings of fact were based on a review of the surveillance video[4] supplemented by testimony from Stinson and Robinson.

The hearing officer made the following findings of fact, which are relevant to Stinson's appeal: "17. The [Probation] Department has a 'Safe Crisis Management Policy' that requires [deputy probation officers] to attempt to de-escalate a situation involving a non-compliant minor prior [*sic*]. [¶] 18. Under the [Probation] Department's policy, [pepper] spray is not to be deployed if the situation is 'controlled' and not to be deployed prior to attempting to use de-escalation techniques. [¶] 19. Shortly prior to the incident, Stinson had attended training where these principles were taught. [¶] 20. Stinson did not try to de-escalate the situation using techniques both familiar and available to him, including seeking the assistance of other [deputy probation officers] and calling for his supervisor. [¶] 21. Stinson took out his pepper spray and warned Naim that he was going to use it while the dorm was still in a controlled situation. He also deployed the pepper spray while the dorm was in a controlled situation. [¶] 22. Under the [Probation] Department's policy, known to Stinson, a minor who is sprayed should be removed for de-contamination as soon as possible. Stinson waited 10 minutes before removing Naim for decontamination."

The hearing officer made the following conclusions of law: "1. The [Probation] Department has sustained its burden of proving that Stinson misused force, acted in an

---

[4] There was no audio available for the surveillance video.

6

inappropriate manner, and failed to exercise sound judgment, when he used [pepper] spray on a minor in violation of [Probation] Department policy. [¶] 2. The [Probation] Department failed to sustain its burden of proof that Stinson falsified a report and made untruthful statements during an investigation. [¶] 3. The discipline imposed was appropriate. [¶] 4. There was no violation of Stinson's *Skelly* rights." The hearing officer recommended that the Probation Department's decision to discharge Stinson be upheld.

On September 18, 2011, the Commission adopted the findings of fact, conclusions of law, and recommendation of the hearing officer as its final decision. The formal order of the Commission sustaining Stinson's discharge was filed October 5, 2011.

**Stinson's Petition for Writ of Administrative Mandamus**

Stinson filed his original petition for writ of administrative mandamus on November 14, 2011, and his operative third amended verified petition on September 13, 2012. Stinson contended the Commission's decision must be set aside for three reasons: (1) the Commission failed to provide Stinson with a fair hearing because the Probation Department did not provide him materials that were used in its decision of discharge; (2) the Commission's decision is not supported by the findings of fact Nos. 17, 18, 20, 21, and 22; and (3) the Commission's conclusions of law Nos. 1, 3, and 4 are not supported by the findings.

In a ruling filed September 12, 2013, the trial court denied the petition. As relevant to the issues on appeal, the trial court found no *Skelly* violation because "[t]he failure to provide an RTSB [Safe Crisis Management policy] concerns the sufficiency of the Hearing Officer's finding of fact that [Stinson] violated an actual policy." Stinson did not contest that he was given notice of the charges against him or a meaningful opportunity to be heard. He failed to articulate what prejudice which arose from this failure, other than the fact of his discharge. With respect to the Probation Department's failure to provide Stinson a copy of the surveillance video, the court held Stinson's

7

contention that he would have been able to better prepare for the hearing did not amount to a due process violation.  Additionally, Stinson's "protestations that he could have better prepared his case if he had access to the video ignores the fact that the subject of the video is [Stinson's] conduct, creating a reasonable presumption that he knew what it depicted."  Stinson also provided no evidence that he requested and was denied a subsequent viewing of the surveillance video.  Stinson did not establish that the Probation Department's failure to provide a copy of the video materially prejudiced him in any way.  The court reached the same conclusion as to his training logs, finding Stinson presented no argument demonstrating how the failure to provide the logs prejudiced him. The court concluded that Stinson's discharge was an appropriate penalty because his misconduct involved the unauthorized use of last-resort force against a minor, which is a serious offense.  Moreover, the incident was the second serious disciplinary action for Stinson involving the inappropriate and excessive use of force against a minor.

The judgment was entered October 23, 2012.  Stinson filed a timely notice of appeal.

## DISCUSSION

### Standard of Review

"Termination of a nonprobationary public employee substantially affects that employee's fundamental vested right in employment.  (*Jackson v. City of Los Angeles* (2003) 111 Cal.App.4th 899, 902; *McMillen v. Civil Service Com.* (1992) 6 Cal.App.4th 125, 129.)  Accordingly, when ruling on a petition for a writ of administrative mandamus seeking review of procedures that resulted in the employee's termination, the trial court examines the administrative record and exercises its independent judgment to determine if the weight of the evidence supports the findings upon which the agency's discipline is based or if errors of law were committed by the administrative tribunal.  (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 811 ['when a court reviews an administrative

8

determination [affecting a vested fundamental right] the court must "exercise its independent judgment on the facts, as well as on the law . . .'"]; *Wences v. City of Los Angeles* (2009) 177 Cal.App.4th 305, 314; *McMillen* [*v. Civil Service Com., supra,*] at p. 129.)" (*Bautista v. County of Los Angeles* (2010) 190 Cal.App.4th 869, 874-875 (*Bautista*).)

"On appeal we review the trial court's factual findings for substantial evidence (*Jackson v. City of Los Angeles, supra,* 111 Cal.App.4th at p. 902; *Evans v. Department of Motor Vehicles* (1994) 21 Cal.App.4th 958, 967, fn. 1) and its legal determinations . . . de novo (see *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432; *Gai v. City of Selma* (1998) 68 Cal.App.4th 213, 219; *Oldham v. Kizer* (1991) 235 Cal.App.3d 1046, 1057.)" (*Bautista, supra,* 190 Cal.App.4th at p. 875).

**Sufficiency of the Evidence**

Contrary to fundamental tenets of appellate practice, Stinson fails to cite much of the unfavorable evidence set forth above or has done so in a one-sided manner. Stinson further fails to affirmatively argue that the judgment is not supported by substantial evidence. The focus of Stinson's opening brief is his contention that his *Skelly* due process rights were violated and his discharge was not an appropriate penalty. The Probation Department contends in its responding brief that there was substantial evidence for the trial court to uphold Stinson's discharge. In his reply, Stinson "acknowledges that [the Probation Department's] substantial evidence argument has some merit and that [the Probation Department]'s Brief accurately portrays their version of the events." However, Stinson "respectfully asks this Court to duly weight the record on appeal and the competing narratives in its decision making." Although he makes no argument regarding the sufficiency of the evidence, Stinson is essentially urging this court to make an argument on his behalf. (See *Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218 ["[a] party who challenges the sufficiency of the evidence to support a finding must set forth, discuss, and analyze all the evidence on that

9

point, both favorable and unfavorable"].)  We decline to do so and deem any challenge to the sufficiency of the evidence waived.  (*Gombiner v. Swartz* (2008) 167 Cal.App.4th 1365, 1374; *Oliver v. Board of Trustees* (1986) 181 Cal.App.3d 824, 832.)  Because we draw all legitimate inferences and resolve all evidentiary conflicts in favor of the judgment, we hold the facts support the trial court's finding that there was substantial evidence to uphold the discharge.  Moreover, Stinson's own admission that the Probation Department's substantial evidence argument "has some merit" bolsters the trial court's finding.

## *Skelly* **Was Not Violated**

Stinson contends the Probation Department withheld critical materials, including the surveillance video of the July 3, 2009 incident, RTSB Safe Crisis Management policy, and his training logs.  Because this is an appeal from a writ proceeding, Stinson has the burden of pleading and proving the materials received prior to his *Skelly* hearing were not sufficient to provide him an opportunity to meaningfully respond at the pretermination stage.  (*Gilbert v. City of Sunnyvale* (2005) 130 Cal.App.4th 1264, 1281 (*Gilbert*).)  We conclude Stinson failed to make an adequate showing.

In *Skelly, supra,* 15 Cal.3d at page 215, the California Supreme Court determined that "due process does not require the state to provide the employee with a full trial-type evidentiary hearing prior to the initial taking of punitive action."  The court held that the minimum procedural due process protections required before disciplinary action became effective included "notice of the proposed action, the reasons therefor, a copy of the charges and *materials upon which the action is based,* and the right to respond, either orally or in writing, to the authority initially imposing discipline."  (*Ibid.*, italics added.)  "Subsequent to *Skelly*, the California Supreme Court and the United States Supreme Court have repeatedly recognized that due process [in this context] is a flexible concept" and does not require the production of every document later offered at the post-termination hearing.  (*Gilbert, supra,* 130 Cal.App.4th at pp. 1276, 1280.)  *Skelly* merely

requires an "unambiguous warning that matters have come to a head, coupled with an explicit notice to the employee that he or she now has the opportunity to engage the issue and present the reasons opposing such a disposition." (*Coleman v. Regents of University of California* (1979) 93 Cal.App.3d 521, 525-526.) "[T]he pretermination hearing 'should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." (*Gilbert, supra,* at p. 1277.) "'To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.' [Citation.]" (*Ibid.*)

Stinson contends the Probation Department did not provide him a copy of the surveillance video in violation of his *Skelly* due process rights. In an April 29, 2010 letter, Stinson's counsel requested that the Probation Department provide Stinson with the surveillance video, among other materials. In response, the Probation Department's Head Civil Service Representative Rahman Williams contacted Stinson's counsel and told her that there were privacy concerns regarding the identity of the minors. Williams explained it was the Probation Department's practice to not "provide actual copies, but we will allow the employee who is the subject of discipline to come review at our facility as many times as they need to." Williams then scheduled both Stinson and his counsel to view the surveillance video at the Probation Department's facility on May 12, 2010. Stinson viewed the video that day with his counsel and Williams present. Stinson was given the opportunity to review the videotape as many times as he wanted.

We conclude Stinson's unrestricted access to the surveillance video provided him adequate notice of the charges against him and a meaningful opportunity to rebut them at the pretermination hearing. Stinson must show prejudice before administrative adjudicatory decisions will be reversed. (E.g., *English v. City of Long Beach* (1950) 35 Cal.2d 155, 159-160; *Swars v. Counsel of City of Vallejo* (1949) 33 Cal.2d 867, 872; see, e.g., *Southern Cal. Jockey Club v. California Horse Racing Bd.* (1950) 36 Cal.2d 167, 176 [requiring a miscarriage of justice for reversal of administrative decisions].) Nothing in the record suggests that Stinson lacked sufficient time to view the video or that he was

11

denied the opportunity to further view the video. Stinson does not challenge the trial court's interpretation of the video or its authenticity, only the Probation Department's failure to provide him a copy. Stinson speculates that he would have been better prepared for his *Skelly* meeting if he had received a copy of the video, but does not explain how he would have prepared differently, let alone how it would have changed the Probation Department's decision to discharge him. Stinson does not establish that the Probation Department's failure to provide a copy of the video materially prejudiced him in any concrete way.

Stinson contends he was not provided with a Safe Crisis Management policy as applied to RTSB staff. Instead, the Probation Department produced only a Safe Crisis Management policy, as applied to Detention Services Bureau (DSB) staff.[5] We agree with the trial court that Stinson's contention does not implicate his *Skelly* due process rights. The failure to provide a RTSB policy to Stinson concerns the sufficiency of the hearing officer's finding of fact that Stinson violated an actual policy applicable to him.[6] Stinson's argument does not suggest he was not given notice of the charges against him or a meaningful opportunity to be heard. Nor does Stinson articulate what prejudice arose from this failure, other than his discharge. This is not a basis for a *Skelly* due process rights violation.

Stinson lastly argues his training logs were not provided by the Probation Department in violation of his *Skelly* due process rights. Stinson presents no further argument demonstrating how the failure to provide him with the training logs deprived him of notice of the charges against him or a meaningful opportunity to respond at the pretermination hearing. The training logs were used by the Probation Department only to support the contention that Stinson was trained in the Safe Crisis Management policy and

[5] RTSB staff work in juvenile camps, and DSB staff work in juvenile halls.

[6] The hearing officer found a violation of RTSB policy based on Stinson's own training and testimony. Stinson's training included an eight hour course on the Safe Crisis Management policy in March 2009, just a few months prior to the incident, and Stinson's testimony indicated his actions were contrary to his training.

had knowledge of that policy. (*Gilbert, supra,* 130 Cal.App.4th at pp. 1275-1281 [employer need not supply all documents in the file to the employee prior to a *Skelly* hearing, only sufficient material to enable the employee to respond to the specific charges].) The training logs were not critical documents required under *Skelly*, and therefore not a violation of Stinson's due process rights.

The video surveillance and other materials relied on by the Probation Department, which were made available to Stinson prior to his pretermination hearing, adequately provided an explanation of the evidence supporting its decision and notice of the substance of the relevant supporting evidence, sufficient to enable Stinson to adequately respond at the pretermination stage. (*Gilbert, supra,* 130 Cal.App.4th at p. 1280.) We hold Stinson did not meet his burden of demonstrating that the Probation Department failed to substantially comply with the pretermination requirements of *Skelly*.

**The Penalty Imposed was Not Excessive**

Stinson challenges the appropriateness of the discipline imposed on him given his lack of training and knowledge of the Safe Crisis Management policy, his supervisor's review of the incident, and his past performance evaluations. We hold that the gravity of Stinson's misconduct, coupled with the previous 2006 suspension, provided an ample justification for Stinson's disciplinary discharge.

"'[I]n a mandamus proceeding to review an administrative order, the determination of the penalty by the administrative body will not be disturbed unless there has been an abuse of its discretion.'" (*Skelly, supra,* 15 Cal.3d at p. 217; accord, *Bautista, supra,* 190 Cal.App.4th at p. 879; *West Valley–Mission Community College Dist. v. Concepcion* (1993) 16 Cal.App.4th 1766, 1778-1779.) "Neither an appellate court nor a trial court is free to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed. [Citation.]" (*Barber v. State Personnel Bd.* (1976) 18 Cal.3d 395, 404.) "It is only in the exceptional case, when it is shown that reasonable minds cannot differ on the propriety of the penalty, that an abuse

of discretion is shown." (*Bautista, supra,* at p. 879, citing *West Valley–Mission Community College Dist v. Concepcion, supra,* at pp. 1778-1779; see *Talmo v. Civil Service Com.* (1991) 231 Cal.App.3d 210, 230 [upholding discharge of deputy sheriff]; cf. *Pegues v. Civil Service Com.* (1998) 67 Cal.App.4th 95, 107 [no abuse of discretion when reasonable minds could differ as to the propriety of the penalty]; *Szmaciarz v. State Personnel Bd.* (1978) 79 Cal.App.3d 904, 921 [even in instances when the trial or reviewing court believes the penalty was too harsh, it cannot interfere with an agency's imposition of a penalty].)

Stinson contends he had no knowledge or training in the Safe Crisis Management policy. As stated in the previous section, his contention goes to the hearing officer's factual findings, which he failed to challenge on appeal. He further failed to contest the hearing officer's finding of fact No. 19 in his writ petition, which states, "Shortly prior to the incident, Stinson had attended training where these principles were taught," referring the Safe Crisis Management policy. Therefore any challenge to that fact is forfeited as it was undisputed that Stinson had training and knowledge of the policy prior to the July 3, 2009 incident. Stinson gives significant weight to the review of the incident by his immediate supervisor, Robert Moore, in support of his contention that the penalty was excessive. Moore concluded that Stinson acted within departmental policies and procedures. We find no fault with the hearing officer's decision affording no weight to Moore's opinion because he was not present at the incident, did not review the surveillance video, and based his conclusion solely on Stinson and Robinson's reports. Stinson does not address the deficiencies in Moore's review on appeal, and we decline to disagree with the hearing officer's assessment without any argument by Stinson. Stinson lastly contends the Probation Department failed to take into account his "historically 'very good'" performance evaluations. The Probation Department did, in fact, consider Stinson's performance evaluations, along with other materials in making the decision to discharge him. As this was a serious offense, discharge was within the range of

14

discipline contained in the Probation Department's Guidelines for Discipline.[7] Additionally, the incident was the second serious disciplinary action for Stinson involving the inappropriate and excessive use of force. The first incident involved inappropriate restraint and excessive force against a minor, resulting in a 30-day suspension in 2006. We conclude discharge was an appropriate penalty for Stinson's misconduct, in light of the nature of the offense and his similar previous infraction.

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.

KRIEGLER, J.

We concur:

TURNER, P. J.

GOODMAN, J.[*]

---

[7] The Guidelines for Discipline regarding discharge state in pertinent part: "Discharges occur when prior discipline has not corrected the employee's unacceptable behavior or performance or in circumstances where a single act of misconduct has rendered the individual unsuitable for further employment. [¶] It is not necessary to impose each step of discipline . . . [s]ome factors [include] the seriousness of the offense, training, the frequency . . . ."

[*] Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.