Filed 9/29/20  Williams v. Board of Civil Service etc. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JEANNE K. WILLIAMS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>BOARD OF CIVIL SERVICE COMMISSIONERS OF THE CITY OF LOS ANGELES,<br><br>    Defendant and Respondent;<br><br>CITY OF LOS ANGELES,<br><br>    Defendant, Real Party in Interest and Respondent. | B290974<br><br>(Los Angeles County<br>Super. Ct. No. BS165992) |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant and Deirdre H. Hill, Judges.  Affirmed.

Jeanne K. Williams, in pro. per., for Plaintiff and Appellant.

Michael N. Feuer, City Attorney, Vivienne A. Swanigan, Assistant City Attorney, and Janis Levart Barquist, Deputy City Attorney, for Defendant and Respondent, and Defendant, Real Party in Interest and Respondent.

———————————

Plaintiff and appellant Jeanne K. Williams (Williams) appeals a judgment entered after the trial court (1) denied her petition for writ of administrative mandamus (Code Civ. Proc., § 1094.5), by which she sought to set aside a decision by the Board of Civil Service Commissioners (Board) of the City of Los Angeles (City) upholding the termination of her employment, and (2) granted a motion for judgment on the pleadings on Williams's remaining cause of action against the City for damages under 42 United States Code section 1983 (section 1983).

Williams has not met her burden to show the trial court erred in denying her petition for writ of mandate and granting the motion for judgment on the pleadings.  Therefore, the judgment is affirmed.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Events leading up to Williams's termination.*

Williams worked for the Los Angeles Police Department (LAPD or Department) for nearly 27 years.  She commenced her

2

employment in January 1988 as a clerk typist, and later was promoted to senior clerk typist.

In July 2012, Williams was administratively transferred to the LAPD training center. Captain Michelle Veenstra (Veenstra), the commanding officer of the Training Division, did not know why Williams had been transferred, but welcomed her and told her she would have a fresh start. Williams's initial assignment was to assemble supply bags for recruits and to serve as backup to the divisional timekeeper, Danielle Ramirez. However, Williams did not learn the timekeeping job and never became the backup timekeeper. In December 2012, Williams was assigned to auditing, which required comparing employees' sign-in sheets with the time entered by the timekeeper in DPS, the computerized timekeeping system.

Laura Rangel (Rangel) was Williams's supervisor, and found her loud, disruptive, confrontational, and difficult to train. At times, Rangel felt unsafe with Williams due to confrontations with her. Rangel issued two evaluations to Williams: one from July 15, 2012 to November 8, 2012, and the other from November 8, 2012 to November 7, 2013. On both occasions, Rangel gave Williams an overall rating of "Meets Standard" without any adverse comments, but Williams refused to sign the evaluations.

Police Officer Enrique Ceja (Ceja) was assigned to the training division and was Williams's co-worker. On Monday mornings, the staff would gather to discuss their weekends. One such conversation took place in December 2013. Ceja was a single father who had custody of his five-year-old son. The neighborhood children would come over to Ceja's house because his son had toys and a freezer stocked with ice cream that he shared with the other children. During a conversation, Williams

3

revealed that she had been molested as a child. Williams then opined that Ceja was going to do the same thing to one of the girls that visited his son. Ceja told her not to say that because " 'next thing you know someone is walking around saying they heard I was having sex with some kid.' " Ceja was offended by the comment, but felt it was made out of ignorance and decided to let it pass.

Two months later, in February 2014, while Ceja was seated at his cubicle, near Sharon Smith's (Smith) cubicle, Williams approached Ceja and asked him if he remembered the name of the girl, "[y]ou know, the one you're going to have sex with?" Ceja became angry and told Williams "she needed to shut the fuck up." The following day, Williams kept prodding Ceja about the girl's name.

Smith, who observed the incident that occurred near her cubicle, reported it to Rangel. Rangel then spoke with Ceja. Ceja confirmed to Rangel that Williams had been accusing him of trying to have sex with a minor.

On March 4 or 5, 2014, Rangel spoke to Lt. Thomas Murrell (Murrell) about Williams's statements to Ceja that he was going to have sexual relations with a child. Murrell found the situation egregious, because "if anybody accuses somebody of committing a felony, that automatically means there is going to be a crime report, and we're going to do a big investigation," and the accusation could cost the officer his job, his reputation, and custody of his child. Rangel also discussed her frustration with Williams's performance, and complained that Williams had become unmanageable and regularly confrontational, to the point where some employees were fearful of her.

4

Murrell then questioned Ceja about the incidents. Ceja told Murrell that he did not want to get Williams in trouble "and he wanted it just to stop." Murrell spoke to Veenstra about Williams, and on March 6, 2014, Williams was assigned to her home pending the outcome of an investigation. Murrell then initiated a complaint that was sent to Internal Affairs for investigation.

Meanwhile, on March 4, 2014, Williams sent an email to Rangel requesting an investigation "regarding misconduct for being dressed gym clothes [*sic*] at my desk." The email also requested that Ceja be investigated "for mis conduct [*sic*] mis use [*sic*] of City time and falsifying a report. . . . Officer Ceja alleges he comes to work at 6:00 to work however most time [*sic*] he is no where [*sic*] to be found. Officer Ceja is a long time [*sic*] friend of Laura Rangel and this practice has been going on for years according to co worker [*sic*]. [¶] I ask that Internal Affairs review view [*sic*] cameras to check proper times and review or audit time book to see what time he says he is at work."

Williams's allegations against Ceja were investigated by Internal Affairs, which found no misconduct. The nature of Ceja's job, which included managing the maintenance of the building, acting as the vehicle coordinator, and being the master key holder, required him to attend to issues at work even before he could sign in at his office.

On July 16, 2014, Internal Affairs completed its investigation into Williams's actions and sustained three counts arising out of her improper remarks to Ceja. The three counts against Williams were as follows: "Count 1. On or about December 2013, you, while on duty, made an improper remark when you accused Officer E. Ceja of attempting to have sex with

5

an underage female.  [¶]  Count 2.  On or about February of 2014, you, while on duty, made an improper remark when you asked Officer E. Ceja what was the name of the underage female who he was attempting to have sex with.  [¶]  Count 3.  On or about February of 2014, you while on duty, (the day after Allegation No. 2) taunted Officer E. Ceja by repeatedly asking if the name of the underage girl he was going to have sex with was 'Emily.' "

Following receipt of Williams's *Skelly* response to the charges against her (*Skelly v. State Personnel Board* (1975) 15 Cal.3d 194), Captain Veenstra continued to recommend Williams's termination.  Chief of Police Charlie Beck accepted that recommendation and terminated Williams, effective November 6, 2014.  Williams appealed her discharge to the City's Civil Service Commission.

A five-day evidentiary hearing was held before a hearing examiner, who tendered his 41-page report to the Board on June 10, 2016.  The hearing examiner found that the charges had been proven by a preponderance of the evidence, and recommended that the Board make the following findings:  the Department had complied with the due process requirements of *Skelly*; all three charges against Williams were sustained; and the penalty of discharge was appropriate.

On August 11, 2016, the matter came before the Board, which heard from representatives of Williams and the Department.  The Board unanimously accepted the hearing examiner's recommendations and sustained the three counts against Williams as well as the penalty of discharge, effective November 6, 2014.

6

2. *Judicial proceedings.*

On November 3, 2016, Williams filed a petition for writ of mandate pursuant to Code of Civil Procedure section 1094.5, seeking to set aside the Board's decision upholding her discharge, combined with a complaint for declaratory relief and damages pursuant to section 1983. In seeking to overturn the Board's decision, Williams argued: (1) the allegations against her were discovered by the Department a year before the charges against her were filed, (2) the hearing officer abused his discretion in admitting evidence of her 30-year-old divorce and child custody dispute, and (3) the Department failed to prove the allegations against her.

In response, the Department contended the Board's findings were supported by the weight of the evidence, Williams's termination was not based on her divorce and custody dispute, and the penalty of discharge was within the City's disciplinary guidelines and was not an abuse of discretion.

a. *Denial of mandamus relief.*

The trial court admitted the administrative record into evidence. After considering the moving, opposition and reply papers, and hearing the matter, the trial court denied Williams's petition for writ of mandate. The trial court ruled as follows:

*Delay by the Department.* Williams argued the evidence showed that Murrell, Rangel, and others knew of misconduct allegations against her in March 2013 but no complaint was filed against her at that time, and the delay was unprofessional and prejudicial. The trial court ruled "[I]t is not clear what William's contention is about a delay in reporting and initiating the investigation. She does not cite to a pertinent statute of limitations for the charges against her or claim that a limitations

7

period passed before the investigation was completed. Instead her argument is that there was a delay in beginning the investigation that was unprofessional. This argument is not accompanied by any showing of prejudice to her, such as a loss of testimony or documentary evidence that would have disproved the charges. [¶] In any event, there was no delay in commencing the investigation because Williams's argument that LAPD knew about her misconduct in March 2013 is not supported. Lt. Murrell did testify that he became aware of Ceja's complaints against Williams in March 2013, and initiated the complaint at that time. However, as the LAPD correctly points out, Lt. Murrell's testimony about the year was clearly in error. When he was shown the complaint he initiated, Murrell's memory was refreshed that he became aware of Williams's misconduct and initiated the complaint on March 6, 2014. The investigation report states that Murrell initiated the investigation on March 6, 2014. Murrell obviously misspoke at the hearing, and his memory was refreshed as to the year. [¶] [Senior clerk typist April] Broussard testified that she heard Williams tell Ceja in the Summer of 2013 'that's why you're going to end up sleeping with that little girl', but did not report it. Broussard was not a supervisor and her failure to report misconduct cannot be attributed to LAPD management. In any event, the hearing officer did not credit Broussard's testimony on the timing of events." The trial court concluded that "LAPD did not delay in commencing the investigation to Williams's prejudice."

*Evidence of divorce-related complaints.* Williams argued the Board committed prejudicial error by admitting into evidence old personnel complaints stemming from Williams's divorce,

which were unrelated to the allegations at issue in the hearing and were prejudicial to Williams. The trial court ruled: "Williams misunderstands the relevance of this historical information. It has nothing to do with the charges against Williams, but is relevant to penalty. As part of LAPD's presentation of the case, Williams's personnel file was entered into evidence at the hearing. This was done because Lt. Murrell and Captain Veenstra had considered Williams's entire personnel file, including the personnel complaints made by Williams's ex-husband, in determining the appropriate penalty. Following an objection by Williams's counsel, the hearing officer stated that the personnel file would be considered solely on the issue of penalty, and that Williams could certainly argue that the information was too stale to be worthy of consideration. [¶] The hearing officer was correct. The prior discipline and complaints against Williams in her personnel file are relevant evidence for purposes of determining whether discharge is appropriate. One of the factors when considering penalty is the likelihood that the misconduct will recur. (*Skelly v. State Personnel Board*, [*supra*,] 15 Cal.3d [at pp.] 217-218.) The hearing officer properly considered the discipline and complaints in Williams's personnel file as evidence supporting LAPD's claim that progressive discipline would not be effective in correcting Williams's behavior. [¶] In addition, there is no evidence that the hearing officer was prejudiced by the evidence or testimony relating to Williams's divorce. The hearing officer's report acknowledged that there were a great many subjects raised at the hearing that were unrelated to the allegations, and stated that he did not consider those issues. The hearing officer's conclusion that the

9

allegations against Williams were proven by LAPD was based solely on the testimony related to those allegations."

*Proof of the charges.* Williams contended that the Department failed to prove the allegations against her, the allegations against her were made in retaliation for her refusal to falsify timekeeping records, and there was no proof of improper statements by her. The trial court rejected the contention, stating: "Ceja testified that Williams accused [him] of wanting to have sex with a minor in December 2013. In February 2014, Williams asked Ceja about the girl's name, and again stated that Ceja wanted to have sex with the girl. The next day, Williams continued to ask about the girl, and started trying to guess the name. [Monica] Lewis, who described herself as Williams's friend, testified that Williams told Lewis that Ceja was having sex with one of the girls in his neighborhood. Lewis did not think that Williams was joking. Williams herself admitted that she asked Ceja about the name of a girl, although she claimed she was asking because she was concerned about the girl's welfare. Ceja's version of events was corroborated by Lewis and Williams, and the hearing officer found Ceja to be credible because he had no reason to fabricate a scenario that placed him in a negative light. [¶] In contrast, no employee corroborated Williams's version of events. . . . The weight of the evidence supports the hearing officer's findings that Williams did make the improper statements described in the allegations. [¶] Williams claims that the allegations were in retaliation for her refusal to falsify time records. The evidence presented at the hearing did not support this argument. . . . Aside from Williams's testimony, no evidence of improper timekeeping methods or falsification of the time keeping records was ever introduced. Moreover, there was no

10

evidence of a link between Williams's claim that she refused to falsify time records and the charges. While Rangel was Williams's supervisor, Murrell initiated the investigation and complaint and he had nothing to do with the time records. [¶] The weight of the evidence supports the hearing officer's findings that Williams made the improper comments to Ceja."

Upon the denial of the petition for writ of mandate, the matter was transferred to another department of the superior court for resolution of the remaining claim under section 1983.

b. *Motion for judgment on the pleadings*.

On February 2, 2018, the City filed a motion for judgment on the pleadings with respect to Williams's cause of action under section 1983. The City argued that because Williams did not prevail on her petition for writ of mandate to overturn her discharge, she was precluded from suing the City for damages under section 1983; Williams could not establish that her termination was based on discriminatory reasons because the trial court's order upholding the discharge was binding, and Williams could not sue for damages without first successfully overturning the administrative decision. Additionally, the doctrine of issue preclusion barred Williams from relitigating the issues that were decided in the administrative proceeding. Further, Williams's cause of action under section 1983 failed as a matter of law because Williams could not establish that her termination was based on an official municipal policy.

Williams filed an opposition which, as the City pointed out in its reply, failed to respond to the legal arguments in the City's moving papers.

On June 1, 2018, after hearing the matter, the trial court entered an order granting the motion for judgment on the

11

pleadings without leave to amend. The trial court ruled that because Williams's section 1983 cause of action for damages "relies upon the same factual allegations as her unsuccessful petition for writ of mandate, the findings of the Hearing Officer are binding and [Williams's] section 1983 claims are precluded from further relitigation." Additionally, Williams did not present any evidence or argument that she suffered a discriminatory discharge as the result of an official municipal policy. "Rather, the evidence shows that it was determined that [Williams] was terminated because of her improper comments made to her coworker."

On June 27, 2018, Williams filed a premature but timely notice of appeal from the judgment entered on October 26, 2018. (Cal. Rules of Court, rule 8.104(d).)

## CONTENTIONS

Williams's opening brief does not articulate a specific series of contentions. However, we construe the brief as a challenge to the order denying Williams's petition for writ of mandate and the order granting the City's motion for judgment on the pleadings, and proceed to review the trial court's rulings.[1]

---

[1] As pointed out in the respondents' brief, the "cardinal rule" of appellate review is that appealed judgments and orders are presumed correct (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181,187), and the burden of affirmatively demonstrating prejudicial error is on the appellant. (*Fundamental Investment etc. Realty Fund v. Gradow* (1994) 28 Cal.App.4th 966, 971.) Williams has failed to meet her burden. As the appellant, Williams was required to provide an intelligible argument supported by legal authority. This burden requires more than a mere assertion that the judgment is wrong because

**DISCUSSION**

1. *No error shown in denial of petition for writ of administrative mandate.*

    a. *Standard of review.*

Discipline imposed on public employees affects their fundamental vested right in employment. (*McMillen v. Civil Service Com.* (1992) 6 Cal.App.4th 125, 129 (*McMillen*).) When a fundamental vested right is at issue, the trial court exercises its independent judgment to determine whether the administrative findings are supported by the weight of the evidence. (*Ibid.*; *Bixby v. Pierno* (1971) 4 Cal.3d 130, 143, fn. 10.) After the trial court exercises its independent judgment, the appellate court reviews the record to determine whether the trial court's findings are supported by substantial evidence based on the whole record. (*McMillen, supra*, 6 Cal.App.4th at p. 129.)

The Board's decision to impose the penalty of discharge is reviewed for an abuse of discretion, as neither the trial court nor this court is free to substitute its discretion for that of the administrative agency as to the appropriate degree of discipline. (*Barber v. State Personnel Bd.* (1976) 18 Cal.3d 395, 404.)

Questions of law, however, are reviewed de novo. (*Schafer v. City of Los Angeles* (2015) 237 Cal.App.4th 1250, 1261.)

---

"[i]ssues do not have a life of their own," and if issues are not raised or developed with a legal argument supported by citation to authority, they may be treated as waived. (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99.) Although an appellate court may treat an improperly briefed issue "as waived and pass on it without consideration" (*Trinkle v. California State Lottery* (2003) 105 Cal.App.4th 1401, 1413), we attempt to review the matter guided by the issues that were articulated in the trial court's rulings.

b.  *Substantial evidence supports the trial court's findings that Williams made the improper remarks to Ceja.*

The administrative record shows the following:  In December 2013, in a Monday morning conversation at work, Williams stated that Ceja was going to molest a neighborhood girl who had befriended his five-year-old son.  In February 2014, Williams interjected herself into another conversation at work and asked Ceja about the identity of the underage girl "that was visiting his home and he was going to have sex with."  The following day, Williams kept prodding Ceja about the girl's name.

Ceja's testimony was corroborated by others.  Broussard, a senior clerk typist who was Williams's coworker, testified that she overheard Williams telling Ceja " '[t]hat's why you're going to end up sleeping with that little girl.' "  Lewis, who had been Williams's colleague and close friend, testified that Williams told her she believed that Ceja was having sex with a young girl in the neighborhood, and Williams also told Lewis that she had discussed the matter with Ceja.  Smith, who worked in the same office as Williams, was present at the end of a conversation between Williams and Ceja, at which time Ceja interrupted Williams and told her not to repeat the story.

Thus, substantial evidence supports the trial court's determination that "[t]he weight of the evidence supports the hearing officer's findings that Williams made the improper comments to Ceja."

c.  *No abuse of discretion in imposition of penalty of discharge.*

As indicated, we review the Board's imposition of the penalty of discharge for an abuse of discretion.  (*Barber v. State Personnel Bd.*, *supra*, 18 Cal.3d at p. 404.)

The hearing examiner's decision, which was upheld by the Board, stated in relevant part: "Making the statements that Officer Ceja 'was going to' have sex with an underage female and repeating that statement on at least one subsequent occasion and using the reference to that allegation as a means of taunting Officer Ceja on a third occasion by asking was her name Emily, represents serious misconduct. The comments not only are clearly inappropriate, but for a police officer and a single parent with custody of a minor child, the comments could have far-reaching, negative consequences, as several witnesses testified.

"[Williams] is a long-term employee who has no suspensions on her record. Lt. Murrell testified, however, that he considered [Williams's] misconduct sufficiently egregious that the misconduct justified immediate discharge without progressive discipline and without even taking into account any aspects of her past record. Captain Veenstra agreed. [Williams] has denied any misconduct and cited numerous either insignificant or unsubstantiated reasons why these charges are retaliation or discrimination against her. Given [Williams's] response, the likelihood that progressive discipline would be effective in correcting [Williams's] conduct is extremely low. Based on the record, the Department's decision to terminate [Williams's] employment is appropriate."

On appeal, Williams contends that the penalty of discharge was excessive and that progressive discipline should have been imposed instead. However, the hearing examiner's decision, which was upheld by the Board, expressly found that a penalty short of termination would have been inadequate, given the egregiousness of Williams's misconduct and her denial that any misconduct occurred. Neither the trial court nor this court is free

15

to substitute its judgment for that of the Board with respect to the severity of punishment (*Barber v. State Personnel Bd.*, *supra*, 18 Cal.3d at p. 404), and on the record presented, we perceive no abuse of discretion in the Board's determination that Williams's misconduct warranted termination.

d. *No merit to Williams's claim of undue delay by the Department in investigating and filing charges against her*.

Williams asserted the allegations against her were discovered by the Department one year before it filed charges against her, and suggested by her argument that this delay somehow precluded the Department from bringing charges against her.

As the trial court found, Williams's assertion there was a one-year delay is not supported by the record. The record reflects: the first incident occurred in December 2013; the second incident took place in February 2014; the third incident followed the very next day; and Murrell initiated the administrative complaint on March 6, 2014. This chronology demonstrates that the Department proceeded expeditiously, and it negates Williams's argument there was undue delay by the Department in investigating the matter and in filing administrative charges against her.

e. *Admission of evidence of old personnel complaints against Williams stemming from her divorce*.

Williams contended the Board erred in admitting into evidence old personnel complaints against her stemming from her divorce because the records were irrelevant to the charges against her and were remote in time. For example, one of the exhibits was a 1998 complaint that alleged Williams had violated

16

a court order by making phone calls to her ex-husband's place of employment.

After Williams's counsel objected to this evidence, the hearing examiner ruled the disciplinary history was relevant to whether the penalty of termination was appropriate, and stated "you certainly have preserved your argument that it's stale information, . . . but you're free to argue that I shouldn't give that much consideration."

In the end, however, the hearing examiner did not base his decision that termination was appropriate on Williams's past personnel complaints. To the contrary, the hearing examiner noted that Williams "is a long-term employee who has no suspensions on her record." Nonetheless, given Williams's denial that any misconduct occurred, the hearing examiner concluded that progressive discipline would be ineffective, and that the Department appropriately had decided to terminate Williams. Consequently, there is no merit to Williams's argument that the hearing examiner's admission of evidence of old personnel complaints relating to her divorce constituted prejudicial error.

In sum, the trial court properly denied Williams's petition for writ of administrative mandate.

2. *Trial court properly granted the City's motion for judgment on the pleadings with respect to Williams's section 1983 claim.*[2]

a. *Standard of appellate review.*

Like a general demurrer, a motion for judgment on the pleadings tests the sufficiency of the complaint to state a cause of action. The court must assume the truth of all factual allegations in the complaint, along with matters subject to judicial notice. (*Stockton Citizens for Sensible Planning v. City of Stockton* (2012) 210 Cal.App.4th 1484, 1491.) A judgment on the pleadings in favor of the defendant is appropriate when the complaint fails to allege facts sufficient to state a cause of action. (*York v. City of Los Angeles* (2019) 33 Cal.App.5th 1178, 1193.) The trial court's order granting judgment on the pleadings is subject to this court's de novo review. (*Ibid.*)

b. *Trial court properly held Williams failed to state a cause of action under section 1983.*

The caption of Williams's complaint included a reference to section 1983, but the pleading, which primarily sought to set aside the Board's decision, lacked any allegations with respect to a cause of action under section 1983. It appears, however, that Williams's theory was that as a result of her termination she sustained damages remediable pursuant to section 1983.

---

[2] Section 1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]"  (42 U.S.C. § 1983.)

As the trial court found, the problem for Williams is that before pursuing her section 1983 claim against the City for damages, she was required to have succeeded in overturning the Board's quasi-judicial decision upholding her discharge. (*Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465, 482–484 [physician could not pursue a tort action for damages resulting from the revocation of her staff privileges without first succeeding in overturning the revocation in a mandamus proceeding] (*Westlake*); *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 76 [when a public employee pursues administrative civil service remedies, receives an adverse finding, and fails to have the finding set aside through judicial review procedures, the adverse finding is binding on discrimination claims under the Fair Employment and Housing Act]; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1090 (*Schifando*) [same].)  Here, Williams's failure to overturn the Board's adverse decision on her petition for writ of administrative mandate has the effect of establishing the propriety of the Department's decision (*Westlake*, at p. 484), and thus precludes her from stating a cause of action against the City under section 1983.

Further, as the trial court ruled, pursuant to *Monell v. Dept. of Soc. Serv. of City of New York* (1978) 436 U.S. 658 [56 L.Ed.2d 611], a local government may not be held liable for its employees' violations of section 1983 unless " 'the constitutional violation was caused by its official policy, practice, or custom.' " (*Arce v. Childrens Hospital Los Angeles* (2012) 211 Cal.App.4th 1455, 1465, fn. 3.)  Here, Williams's section 1983 claim did not allege that the City had an official policy, practice, or custom that resulted in her termination.

19

Finally, to show the trial court abused its discretion in granting judgment on the pleadings without leave to amend, the plaintiff has the burden of demonstrating that "there is a reasonable possibility the plaintiff could cure the defect with an amendment." (*Schifando*, *supra*, 31 Cal.4th at p. 1081; accord, *Foundation for Taxpayer & Consumer Rights v. Nextel Communications, Inc.* (2006) 143 Cal.App.4th 131, 135.) Williams has not shown in what manner she could amend her complaint and how that amendment would change the legal effect of her pleading with respect to the deficiencies discussed above.

For these reasons, the trial court properly granted the City's motion for judgment on the pleadings on Williams's section 1983 claim without leave to amend.

## DISPOSITION

The judgment is affirmed.  Respondents shall recover their appellate costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

EGERTON, J.

DHANIDINA, J.

21