[No. B219035. Second Dist., Div. Seven. Nov. 9, 2010.]

EMIR BAUTISTA, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

COUNSEL

Lackie Dammeier & McGill, Russell M. Perry and Michael A. McGill for Plaintiff and Appellant.

Lawrence Beach Allen & Choi, Paul B. Beach and Scott E. Caron for Defendants and Respondents.

OPINION

**PERLUSS, P. J.**—Emir Bautista was terminated as a sworn peace officer by the Los Angeles County Sheriff's Department (Department) for engaging in a personal relationship with a known prostitute and heroin addict in violation of the Department's prohibited-association policy. On appeal Bautista challenges the trial court's denial of his petition for writ of mandate seeking to reverse the decision of the Los Angeles County Civil Service Commission (Commission) approving his discharge and the court's order granting summary judgment for the Department and Los Angeles County Sheriff Lee Baca on Bautista's federal civil rights claim (42 U.S.C. § 1983) (section 1983). Bautista contends the Department's prohibited-association policy, as applied to him, violated his right to freedom of association under the First and Fourteenth Amendments to the United States Constitution, as well as his statutorily protected federal civil rights. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Sheriff's Department's Prohibited-association Policy*

Bautista was hired as a deputy sheriff by the Department in October 1996 and, until his termination, had not been subject to any discipline. When he was hired, Bautista received a copy of the Department's Manual of Policy and Procedures (Policy Manual), which included section 3-01/050.90, the Department's prohibited-association policy: "Members shall not knowingly maintain a personal association with persons who are under criminal investigation or indictment and/or who have an open and notorious reputation in the community for criminal activity, where such association would be detrimental to the image of the Department, unless express written permission is received from the member's unit commander."[1]

---

[1] The Policy Manual was updated in 1997. The prohibited-association policy remained unchanged at that time and continues today in the same form.

### 2. *Bautista's Relationship with Shawn Crook*

In August 2002, while on duty driving a marked Department bus, Bautista saw Shawn Crook, a prostitute, standing on a street corner. Bautista did not know Crook, but recognized her as a prostitute. He decided to engage her in a conversation, not for any law enforcement purpose, but to attempt to get to know her and understand the reasons she had resorted to prostitution. Bautista hoped he could help reform women like Crook and assist them in leading crime-free lives. Bautista enjoyed talking to Crook; the two soon developed a friendship. At some point during their ongoing association, Bautista gave Crook his home telephone number. Because Crook did not have a car, Bautista often drove her places, including to dinner and to the methadone clinic where she was receiving treatment for her heroin addiction. (Crook told Bautista she was a recovering heroin addict.) Bautista also gave Crook rides home in the early morning after she had finished working the streets to make sure she returned safely. Bautista did not seek permission from the Department to associate with Crook and did not report his friendship with Crook to the Department.

On July 29, 2003, sometime after midnight, Gardena Police Sergeant Jocelyn Hillard saw Crook leaning on a pickup truck in a restaurant parking lot. Hillard had frequently seen Crook during her early morning shift and knew her to be a prostitute. Hillard shined a light on Crook and asked her what she was doing. Crook responded she had been working that night as a prostitute, "but I'm not now, I'm going home." Hillard saw Bautista standing near Crook. When Hillard told Bautista she intended to run the license plate of the truck, Bautista admitted the truck was his and he was a deputy sheriff with the Department. Bautista explained he was Crook's friend and was only there to give her a ride home. Bautista asked Hillard not to report him to the Department's watch commander. Hillard advised Bautista that it was not a "smart idea" to associate with Crook.

On August 3, 2003 Gardena Police Lieutenants Charles Balo and Edward Medrano were on patrol when they saw Crook sitting in the passenger seat of Bautista's car. Balo had known Crook for several years and was aware she was a longtime prostitute and heroin addict. The two officers stopped to talk to Crook and Bautista. Bautista explained to the officers he was an off-duty deputy sheriff and he and Crook were just friends. Crook confirmed Bautista's characterization of their relationship, acknowledging that, while she had wanted a dating relationship, she understood Bautista could not "be involved with me right now because I'm doing this." Medrano, who also knew Crook as a prostitute and longtime heroin addict, warned Bautista not to associate with Crook because, he suspected, it could cost him his job with the Department. Although Bautista denied Crook was still using heroin, Medrano

told Bautista he had encountered Crook only a few days earlier and Crook had confessed to him she was still using heroin, though only occasionally.

In August 2003, shortly after their encounter with officers Balo and Medrano, Bautista and Crook moved in together. They are now married.

### 3. *The Discipline Proceedings Against Bautista*

After being informed by the Gardena Police Department about Bautista's personal association with Crook, the Department began an internal investigation. On July 28, 2004 Bautista was served with a letter of intent to discharge him from his position as deputy sheriff, effective August 18, 2004. The letter charged Bautista with, among other things, violating the Department's prohibited-association policy by engaging in a personal relationship with Crook without informing the Department and obtaining the Department's consent.[2]

Pursuant to civil service rules, Bautista timely petitioned for a full evidentiary hearing before a Commission hearing officer. After a four-day hearing at which several witnesses testified, the hearing officer issued her findings of fact and conclusions of law and recommended Bautista's discharge on the sole ground he had violated the Department's prohibited-association policy.[3] The hearing officer concluded the prohibited-association policy was neither unconstitutionally vague on its face nor unconstitutional as applied to Bautista. In addition, the hearing officer found discharge to be an appropriate penalty under the Department guidelines. The hearing officer explained, "[I]nitiating and pursuing a relationship with Crook while she was working as a prostitute and taking illegal drugs was a personal choice [Bautista] clearly believed in; however it was also a choice which necessarily resulted in his discharge."

On January 18, 2006, the Commission overruled Bautista's objections and formally approved the hearing officer's findings of fact and recommendation of discharge.

---

[2] Bautista was also accused of making false statements during Department internal affairs investigations and engaging in immoral conduct in violation of other Department policies. As explained below, Bautista was cleared of those charges in administrative proceedings.

[3] The hearing officer found the Department had not proved Bautista was romantically involved with Crook prior to being notified of the disciplinary charges against him. The hearing officer also found Bautista had been consistently truthful in his interactions with the Gardena Police Department as well as in his interviews with the Department's internal affairs unit. In addition, the hearing officer found Bautista had had a "positive effect on Crook's life," having succeeded in his objective of helping her abandon her life of prostitution.

4. *Bautista's Petition for Administrative Writ of Mandate and Complaint for Violation of His Federal Civil Rights*

On April 13, 2006 Bautista filed a petition for writ of mandate in the superior court challenging the Commission's decision on the ground the prohibited-association policy violated his right to freedom of association under the First and Fourteenth Amendments to the United States Constitution. In the operative second amended petition and complaint, Bautista also included a separate claim for violation of his federal civil rights.

On April 5, 2007 the trial court (Judge Dzintra Janavs) held a hearing on the petition for writ of mandate. The court denied the petition, rejecting Bautista's claims the policy was vague and unconstitutional on its face. The court also found the prohibited-association policy was rationally related to a legitimate purpose of preserving the credibility and integrity of the Department and avoiding potential conflicts of interests that could harm the Department. The court did not consider the federal civil rights claim.[4]

On February 9, 2009 the Department and Baca filed a motion for summary judgment on the section 1983 claim. On June 12, 2009 the trial court (Judge Zaven Sinanian) granted the motion, ruling Bautista had not demonstrated a constitutional violation to support his section 1983 claim. Judgment was entered on July 16, 2009. Bautista has filed a timely appeal from the judgment.

## DISCUSSION

1. *The Trial Court Did Not Err in Denying the Petition for Writ of Mandate*

    a. *Standard of review*

Termination of a nonprobationary public employee substantially affects that employee's fundamental vested right in employment. (*Jackson v. City of Los Angeles* (2003) 111 Cal.App.4th 899, 902 [4 Cal.Rptr.3d 325]; *McMillen v. Civil Service Com.* (1992) 6 Cal.App.4th 125, 129 [8 Cal.Rptr.2d 548].) Accordingly, when ruling on a petition for a writ of administrative mandamus seeking review of procedures that resulted in the employee's termination, the

---

[4] The trial court, sitting as a writs and receivers department, apparently bifurcated the federal civil rights claim and then transferred that claim to an unlimited civil claims department following its denial of the petition for writ of mandate. On January 28, 2008 we dismissed Bautista's appeal from the trial court's denial of his petition for writ of mandate on the ground there had not been a final judgment on the complaint—the federal civil rights claim had yet to be adjudicated.

trial court examines the administrative record and exercises its independent judgment to determine if the weight of the evidence supports the findings upon which the agency's discipline is based or if errors of law were committed by the administrative tribunal. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 811 [85 Cal.Rptr.2d 696, 977 P.2d 693] ["when a court reviews an administrative determination [affecting a vested fundamental right] the court must 'exercise its independent judgment on the facts, as well as on the law . . .' "]; *Wences v. City of Los Angeles* (2009) 177 Cal.App.4th 305, 314 [99 Cal.Rptr.3d 199]; *McMillen*, at p. 129.)

On appeal we review the trial court's factual findings for substantial evidence (*Jackson v. City of Los Angeles, supra,* 111 Cal.App.4th at p. 902; *Evans v. Department of Motor Vehicles* (1994) 21 Cal.App.4th 958, 967, fn. 1 [26 Cal.Rptr.2d 460]) and its legal determinations—including the constitutionality of the challenged administrative policy—de novo (see *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956]; *Gai v. City of Selma* (1998) 68 Cal.App.4th 213, 219 [79 Cal.Rptr.2d 910]; *Oldham v. Kizer* (1991) 235 Cal.App.3d 1046, 1057 [1 Cal.Rptr.2d 195]).

b.  *Bautista's discharge from the Department was not unconstitutional*

■  Bautista contends the prohibited-association policy, as applied to him,[5] violated his federal constitutional right to association. In *Roberts v. United States Jaycees* (1984) 468 U.S. 609 [82 L.Ed.2d 462, 104 S.Ct. 3244] the United States Supreme Court identified two aspects of this constitutional right: the right to expressive association and the right to intimate association. (*Id.* at pp. 617–618; see *Warfield v. Peninsula Golf & Country Club* (1995) 10 Cal.4th 594, 624 [42 Cal.Rptr.2d 50, 896 P.2d 776].) While the right to expressive association protects those activities incident to exercising one's First Amendment rights—speech, assembly, petition for the redress of grievances and the exercise of religion—the right to intimate association is protected as an "intrinsic element of personal liberty." (*Roberts*, at p. 620; accord, *Warfield*, at p. 624; see also *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1110 [60 Cal.Rptr.2d 277, 929 P.2d 596]; *Arellanes v. Civil Service Com., supra,* 41 Cal.App.4th at p. 1217 (*Arellanes*); *Bailey v. City of National City* (1991) 226 Cal.App.3d 1319, 1328 [277 Cal.Rptr. 427] (*Bailey*).) The highly personal relationships sheltered by this guarantee of intimate association include "those that attend the creation and sustenance of

---

[5] Bautista has abandoned on appeal his argument the prohibited-association policy is unconstitutional on its face. In *Arellanes v. Civil Service Com.* (1995) 41 Cal.App.4th 1208 [49 Cal.Rptr.2d 73], our Division Three colleagues rejected a similar challenge to the Department's prohibited-association policy, finding the policy was not unconstitutionally vague or overbroad.

a family," including marriage, childbirth and cohabitation with one's relatives. (*Roberts*, at p. 619; accord, *Warfield*, at p. 624.)

Bautista's challenge concerns the right of intimate association. The threshold question is the level of scrutiny to be applied to Bautista's constitutional claim. Because the effect of the prohibited-association policy was to deny Bautista the right to remain employed by the Department while becoming involved with Crook—a woman whom he eventually married—he suggests the policy fails under the strict scrutiny standard of review, which accompanies constitutional challenges to laws or policies that infringe on the fundamental right of marriage and similar intimate associations. (See *Zablocki v. Redhail* (1978) 434 U.S. 374, 384 [54 L.Ed.2d 618, 98 S.Ct. 673] [characterizing marriage as " 'the most important relation in life' " and " 'the foundation of the family and of society, without which there would be neither civilization nor progress' "]; *Cleveland Board of Education v. LaFleur* (1974) 414 U.S. 632, 639–640 [39 L.Ed.2d 52, 94 S.Ct. 791] ["freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment"]; cf. *In re Marriage Cases* (2008) 43 Cal.4th 757, 818 [76 Cal.Rptr.3d 683, 183 P.3d 384] [recognizing right to marry as a "basic, constitutionally protected civil right" under Cal. Constitution (italics omitted)].)

■ It is well settled, however, that an incidental effect on the right to marry does not subject a law or regulation to strict scrutiny. (See *Califano v. Jobst* (1977) 434 U.S. 47, 58 [54 L.Ed.2d 228, 98 S.Ct 95] [Social Security Act (42 U.S.C. § 301 et seq.) provision that discontinued benefits for child who married person ineligible to receive Social Security benefits did not substantially infringe on right to marry; while there may be some incidental effect on marriage because the law may make "some suitors less welcome than others," that incidental effect does not merit strict scrutiny review]; *Zablocki v. Redhail, supra,* 434 U.S. at p. 387 ["[W]e do not mean to suggest that every state regulation which relates in any way to the incidents of or prerequisites for marriage must be subjected to rigorous scrutiny. To the contrary, reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed."].) When, as here, the regulation or policy does not deny a class of persons the fundamental right of marriage guaranteed by the due process clause of the United States Constitution (cf. *Loving v. Virginia* (1967) 388 U.S. 1, 12 [18 L.Ed.2d 1010, 87 S.Ct. 1817] [identifying marriage as fundamental right under federal Const.; applying strict scrutiny to strike down law prohibiting interracial marriage]; *Perez v. Sharp* (1948) 32 Cal.2d 711, 714–715 [198 P.2d 17] [holding law prohibiting interracial marriage violates Cal. Const.]; *In re Marriage Cases, supra,* 43 Cal.4th at p. 845 [subjecting law prohibiting same-sex marriage to strict scrutiny analysis under former provision of Cal. Const.]), but affects that right only incidentally,

the appropriate level of scrutiny to be applied, as the trial court recognized, is rational basis—that is, whether the Department's prohibited-association policy was rationally related to a legitimate state purpose. (See, e.g., *Ortiz v. Los Angeles Police Relief Assn.* (2002) 98 Cal.App.4th 1288, 1312 [120 Cal.Rptr.2d 670] (*Ortiz*).)

*Ortiz, supra,* 98 Cal.App.4th 1288, which considered a similar question, albeit in the context of the California Constitution, is closely analogous. In *Ortiz* an employee (Ortiz) of a public organization that administered police officers' employment benefits was terminated after she refused to end her personal relationship with (and impending engagement to) a prison inmate. Ortiz complained the termination of her employment violated her right to intimate association and privacy guaranteed by the California Constitution. The court applied rational basis review to the employee's claim because the organization's policy prohibiting employees with access to police officers' confidential information from becoming involved with felons did " 'not "directly and substantially" interfere with the fundamental' " right of marriage. (*Id.* at p. 1310; see *id.* at p. 1312 [" 'At most, it is an unwelcome hurdle, forcing one spouse to attempt to transfer to another department within the County or to leave the County's employ altogether. We cannot conclude that the Policy sufficiently impacts a fundamental right so as to trigger strict scrutiny.' "]; see also *Parsons v. County of Del Norte* (9th Cir. 1984) 728 F.2d 1234, 1237 ["Only when a government regulation directly and substantially interferes with the fundamental incidents of marriage is . . . strict scrutiny applicable . . . . Where fundamental rights are not substantially burdened the regulation will be upheld unless there is no rational basis for its enactment." (citation omitted)].) The court upheld Ortiz's termination, concluding the organization's conflicts of interest rules were rationally related to a legitimate interest—protecting the personal safety and well-being of police officers and their families. (*Ortiz,* at p. 1314.)

Bautista's constitutional claim, although rooted in the federal Constitution rather than the California Constitution, is no more compelling than Ortiz's. (See *Ortiz, supra,* 98 Cal.App.4th at pp. 1303, 1306 [right to marry is "virtually synonymous" with right of intimate association].) The Department has a legitimate interest in regulating the behavior of its sworn officers to minimize conflicts of interest and protect the credibility and integrity of the Department. (See, e.g., *Fugate v. Phoenix Civil Service Bd.* (9th Cir. 1986) 791 F.2d 736, 741 (*Fugate*) ["City has legitimate interests in maintaining the moral[e], integrity, and public acceptance of the police department, and in minimizing conflicts of interest and risks of blackmail. In order to protect these interests, the City must establish regulations governing police officers' behavior . . . ."]; see also *Kelley v. Johnson* (1976) 425 U.S. 238, 247 [47 L.Ed.2d 708, 96 S.Ct. 1440] [police officers are subject to higher standards of conduct than other public employees]; *Bailey, supra,* 226

Cal.App.3d at p. 1328.) Accordingly, antifraternization rules prohibiting police officers from socializing with those who they know are engaging in criminal activity have routinely been upheld against constitutional challenges such as Bautista's. (See, e.g., *Arellanes, supra,* 41 Cal.App.4th at p. 1217 [holding department's prohibited-association policy—same policy at issue in instant case—serves legitimate public purpose and not unconstitutionally vague or overbroad]; *Ortiz,* at p. 1313; see also *Bailey,* at p. 1328 [prohibitions enjoining police officers "from maintaining close personal relationships with the criminal underside of society" do not violate Constitution].)

Bautista contends there was insufficient evidence the Department's legitimate interest in preserving its integrity and credibility and minimizing conflicts of interest was compromised by his association with Crook. In fact, he asserts, the evidence was undisputed that his interest and involvement with Crook had been instrumental in Crook's eventual abandonment of prostitution and her recovery from heroin addiction, a result that was undoubtedly beneficial to both the Department and to the larger community it serves. Undoubtedly, there are certain admirable aspects to Bautista's efforts to help Crook. However, as the trial court observed, Bautista's decision to initiate a personal relationship with Crook, without the Department's approval, was not without costs. Chief Richard Martinez, the head of the Department's Court Services Division, testified Bautista's long-standing personal association with Crook, along with her multiple detentions by the Gardena Police Department while he was with her, embarrassed the Department and undermined its reputation in both the law enforcement community and the public it is charged with protecting. Martinez explained, "In order to be an effective law enforcement agency with other agencies, they need to feel confident that we are an organization that has employees that can perform their duties in a manner that is of the highest degree. That they can maintain confidentiality, that they can be trusted to obey the law, to not compromise their relationship as a law-enforcement officer with anyone in the community. . . . Same thing in dealing with people out in the field. There are those whom we come in contact with who are victims of crimes. Those who are witnesses of crimes that trust us to do the right thing and ensure their safety and protection. We can't compromise that and even give the perception of compromise by our actions in showing that we can't be trusted." While we have some doubt whether evidence of actual harm to the Department was even necessary in this case (see, e.g., *Ross v. Clayton County, Ga.* (11th Cir. 1999) 173 F.3d 1305, 1311 [police department's concern that conflicts of interest could undermine its credibility was legitimate interest; department need not produce evidence that officer's living arrangement with probationer caused *actual* disruption to department]; *Fugate, supra,* 791 F.2d at pp. 741–742 [police officer's behavior—engaging in sexual behavior with prostitute while on duty—subjected police department to risk of blackmail regardless whether

risk actually realized]), Chief Martinez's testimony is sufficient evidence that Bautista's conduct harmed the Department.

### c. *The penalty imposed was not excessive*

" '[I]n a mandamus proceeding to review an administrative order, the determination of the penalty by the administrative body will not be disturbed unless there has been an abuse of its discretion.' " (*Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 217 [124 Cal.Rptr. 14, 539 P.2d 774]; accord, *Deegan v. City of Mountain View* (1999) 72 Cal.App.4th 37, 46 [84 Cal.Rptr.2d 690]; *West Valley-Mission Community College Dist. v. Concepcion* (1993) 16 Cal.App.4th 1766, 1778–1779 [21 Cal.Rptr.2d 5].) "Neither an appellate court nor a trial court is free to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed." (*Barber v. State Personnel Bd.* (1976) 18 Cal.3d 395, 404 [134 Cal.Rptr. 206, 556 P.2d 306].) "It is only in the exceptional case, when it is shown that reasonable minds cannot differ on the propriety of the penalty, that an abuse of discretion is shown." (*Deegan*, at p. 47, citing *West Valley-Mission Community College Dist.*, at pp. 1778–1779.)

Bautista contends the Commission abused its discretion in upholding his termination rather than requiring the Department to impose a less severe punishment. However, he ignores that discharge is expressly stated in the Department's Guidelines for Discipline as the appropriate punishment for a violation of the prohibited-association policy.[6] Moreover, Chief Martinez explained discharge was appropriate in this case because Bautista's close personal relationship with Crook over a two-year period, while she was engaged in illegal activities, had evidenced his poor judgment and undermined the Department's trust and confidence in Bautista as a law enforcement officer. Although Bautista complains the discipline was overly harsh in his case, he does not identify anything in the record that would support his contention that his termination was an abuse of the agency's discretion.

### 2. *Summary Judgment on Bautista's Section 1983 Claim Against the Department and Sheriff Baca Was Proper*

Bautista contends the court erred in denying his section 1983 claim as a matter of law.[7] Section 1983 provides, "Every person who, under color of any

---

[6] The Department's Guidelines for Discipline, in fact, state that identified punishment for a violation of the prohibited-association policy—discharge—"may not be reduced."

[7] A motion for summary judgment is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable

statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."[8] Bautista's section 1983 claim is based on his assertion that the termination of his employment for violating the prohibited-association policy unconstitutionally infringed his right to intimate association. Because, as we have explained, Bautista cannot demonstrate any constitutional violation, his section 1983 claim against the Department and Sheriff Baca necessarily fails.

## DISPOSITION

The judgment is affirmed. The Department is to recover its costs on appeal.

Woods, J., and Zelon, J., concurred.

---

dispute warrant judgment for the moving party as a matter of law. (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348 [1 Cal.Rptr.3d 32, 71 P.3d 296].)

[8] "*State courts exercise concurrent jurisdiction with federal courts in actions based on the federal Civil Rights Act, but because the right being enforced is created by a federal statute, the state courts must apply federal substantive law.*" (*Garcia v. Superior Court* (1996) 42 Cal.App.4th 177, 181 [49 Cal.Rptr.2d 580].)