Filed 7/14/15  Morales v. County of Los Angeles CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| BENJAMIN MORALES, | B257303 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. VC063183) |
| v. | |
| COUNTY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Roger T. Ito, Judge.  Affirmed in part and reversed in part.

Corey W. Glave for Plaintiff and Appellant.

McMillion & Hirtensteiner, Janine McMillion and Syliva Havens for Defendants and Respondents.

## I.  INTRODUCTION

In January 2011, a private citizen discovered a cell phone secreted in her vehicle. Her local police agency, the Glendale Police Department (Glendale), traced the phone to Benjamin Morales (Morales), a probation officer employed by the Los Angeles County Probation Department (the Department).  As a consequence of having been contacted by Glendale, Morales reported to his Department superiors that he had been acting as a private investigator in violation of his employment.  In 2012 and 2013, the Department disciplined Morales in ways he challenged, both in administrative proceedings and by the complaint which is the subject of this appeal.  With respect to the superior court action, Morales appeals the trial court's sustaining without leave to amend demurrers filed by the Department and by its director and certain other Department officials.  We affirm in part and reverse in part the ensuing judgment and return the case to the trial court for further proceedings.

## II.  FACTUAL AND PROCEDURAL BAKGROUND[1]

Morales had been a probation officer employed by the Department for 13 years by January 2011.  In that capacity he was a sworn peace officer and within the category of "public safety officers" "entitled to all of the rights and protections of the Public Safety Officers Procedural Bill of Rights Act" (POBRA).  (Govt. Code § 3300 et seq.)[2]  At the times relevant to this matter, Morales was assigned to the Department's Special Enforcement Unit (SEU).  In that assignment he was specially authorized by the director

---

[1]     We take the alleged facts from the first and second amended complaints (both are relevant to the separate demurrers adjudicated for different respondents on this appeal), as supplemented by facts which are the proper subject of judicial notice.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

[2]     All further undesignated references are to the Government Code.

of the Department to carry a firearm.[3]  Officers so assigned also commonly received pay (whether "additional responsibility bonus" or overtime (overtime)) in addition to the salary for their employment classification.

On January 11, 2011,[4] a Glendale detective contacted Morales to learn if a cell phone secreted on a vehicle driven by a private citizen had been placed there by Morales. Morales confirmed to the detective that, in December of 2010, Morales had agreed, for a fee, to help an acquaintance trace the movements of her mother's boyfriend.  To do so Morales secreted a cell phone on the mother's vehicle and attempted to track the cell phone with a computer tracking program.  He had been unsuccessful up to the time the phone was discovered.  Of the $600 fee he had sought, he had received only $200 by the time the cell phone was discovered.

On January 14, 2011, Morales reported his conduct to the appropriate supervisor in the Department.  He had not previously disclosed his "off duty" work to anyone in the Department.  Morales's conduct was contrary to Department policy as well as a violation of Penal Code section 637.7, subdivision (a).[5]

Morales was never charged with a violation of law.  The Department conducted an investigation and, on January 13, 2012, issued a Notice of Intent to Suspend for 10 days without pay.  Morales invoked his right to pre-disciplinary due process, and had a *Skelly*

---

[3]      Deputy probation officers were not allowed to carry firearms without individual authorization by the director or the Department.

[4]      The date of Morales's first contact by Glendale is also stated as January 8, 2011. This discrepancy is not material to the issues presented on this appeal; the Department's time to investigate starts with its first knowledge of events which may lead to discipline; here, on January 14, 2011.  (See § 3304, subd. (d)(1).)

[5]      Penal Code section 637.7, subdivision (a) makes a misdemeanor "us[ing] an electronic tracking device to determine the location or movement of a person."
      It is undisputed that Morales used the cell phone in coordination with a computer program in an effort to track the movements and location of the boyfriend of his client's mother for a fee.  It is also undisputed that he admitted these facts to the Glendale detective whose investigation had led to this discovery; Morales described what he had done as "dumb."

hearing[6] in March 2012. The *Skelly* hearing officer found that the Department had not given Martinez notice of discipline within one year (as required by section 3304, subdivision (d)(1)) and recommended that only a written reprimand should be issued. With knowledge of the recommendation of the *Skelly* hearing officer, in June 2012, the Department issued a Notice of Suspension, ordering that Morales be suspended without pay for 10 days. No other discipline was indicated in this notice.

In the same month, Morales filed an administrative appeal of this Notice of Suspension with the Los Angeles County Civil Service Commission (the Commission). He served the 10 day suspension in July 2012, while his appeal was pending.[7]

A two day hearing before a Commission hearing officer was held in January, 2013, on Morales's appeal of the 10 day suspension. On February 26, 2013, the Commission hearing officer recommended reduction in discipline to a written reprimand. (This determination was affirmed by the Commission in 2014, after the trial court ruled on the Department's demurrer but prior to the hearing on the demurrer filed by individual defendants and respondents Jerry Powers, Chief Probation Officer (Powers), Darlyne R. Pettinicchio, SEU Bureau Chief (Pettinicchio) and Michelle Guymon, a Department Director (Guymon).)

On April 13, 2013, Morales challenged the Department's decision to limit or disallow certain overtime payments for officers in special assignments including himself in a way he does not specifically allege. Within the same month, on April 19, the Department issued a Notice of Administrative Reassignment under Powers's name as

---

[6]     So named as a reference to *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194 (*Skelly*), which held that each permanent public employee is entitled to certain procedural rights before proposed discipline is implemented, including a copy of the charges and materials upon which the proposed action is based, as well as the right to respond, either orally or in writing, before the public employer imposes the proposed discipline. POBRA provides for enhanced rights, several of which are the subject of this litigation.

[7]     Morales does not allege why he served his suspension while his administrative appeal remained unresolved. He notes in his complaint that his appeal to the Commission was pending at the time he filed this action.

director, signed by Pettinicchio, terminating Morales's SEU assignment. Powers also terminated Morales's authorization to carry a firearm. This reassignment ended Morales's eligibility to receive overtime which he had been earning as a member of the SEU. Guymon and/or Pettinicchio told Morales that he was being reassigned because he had been suspended for 10 days in the prior year.

On May 20, 2013, Morales filed both (1) an administrative appeal with the Commission, challenging his reassignment from SEU, the revocation of his authorization to carry a weapon and the "reduction" in his salary (loss of overtime),[8] and (2) the original complaint in this litigation. The Commission denied this administrative appeal on August 13, 2013, but gave him a date certain by which he might file an amended petition. The record on appeal contains no indication he did so.

This appeal addresses the civil complaint. We review the trial court's sustaining without leave to amend (1) the Department's general demurrer to the first cause of action of the first amended complaint, which contains allegations against the Department only, and (2) the individual defendants' general demurrer to the second cause of action of the second amended complaint. A single judgment was entered after the trial court sustained the demurrer filed by the Department officials. Morales filed a timely appeal.

---

[8]     This is Morales's second administrative proceeding. As indicated earlier, in June 2012, he had filed an administrative appeal of the Notice of Suspension without pay for 10 days.

### III.  CONTENTIONS[9]

Morales makes several contentions to support his claim that the trial court erred in sustaining the Department's demurrer to the first cause of action of the first amended complaint without leave to amend:  It erred in ruling he was required to exhaust administrative remedies before filing this litigation; it failed to accept as true for purposes of demurrer his allegation that his 2013 reassignment from the SEU (as well as revocation of permission to carry a firearm and loss of eligibility for overtime) was punitive; it erred in failing to find a violation of POBRA based on his allegations that he was denied an administrative appeal; and it erred in its ruling that there was no violation of POBRA in the Department denying him access to his personnel file or the right to comment on reports placed in that file.[10]

---

[9]  We asked the parties to brief the issue of whether the lack of reporters' transcripts of proceedings at the demurrer hearings adversely affects this appeal.  While respondents contend we should affirm based on the absence of those transcripts, a contention which appellant disputes, as the principal issues on appeal are reviewed de novo, as discussed in the text below, we are able to resolve this matter without either a transcript of either demurrer proceeding or, e.g., a settled statement of the relevant proceedings below.  (See Cal. Rules of Court, rule 137(a).)

[10]  In his reply brief, Morales appears to raise an additional contention, that the discipline imposed violates section 3304, subdivision (d)(1), as the January 2012 Notice of Intent to Impose Discipline was not received by him within one calendar year of his disclosure to the Department of the facts of potential violation of Department rules.  Morales cites both section 3304, subdivision (d)(1) and *Earl v. State Personnel Board* (2014) 231 Cal.App.4th 459 (*Earl*) in support.  (Whether the Notice of Intent to Impose Discipline contained or omitted certain terms is a question of fact which we review for abuse of discretion.  (See *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112.))  However, in his opening brief, Morales distinguishes two aspects of this statute and decision, viz., he distinguishes his contention that he did not receive *notice of all discipline* that the Department was considering imposing, on the one hand (by the statutorily required "Letter of Intent" or "Notice of Adverse Action"), from *timely service* of the Notice of Intent to Impose Discipline on him once both the investigation and *Skelly* hearing had been completed, on the other.  (Compare § 3304, subd. (d)(1) and (f).)  This distinction appears from a fair reading of footnote 11 in his opening brief, in which he

As to the second cause of action, Morales alleges that named Department superiors violated his rights to due process and retaliated against him for the exercise of his First Amendment rights.  We consider these contentions in separate sections of this opinion after discussing the standard of review and an evidentiary contention.[11]

A.  Standard of Review

Appellant misstates the standard of review as that of substantial evidence.  The standard of review to be applied in this appeal is well established to be de novo.  "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules.  'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.]  We also consider matters which may be judicially noticed.' [Citation.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  Generally, "[i]n reviewing an order sustaining a demurrer without leave to amend, 'the allegations of the complaint must be liberally construed with a view

states: "There is a question whether the 2012 Disciplinary notices were timely, *but that issue is not addressed in this action.*"  (Italics added.)

The issue of timely service of notice was apparent from the text of this statute prior to the decision in *Earl*; nevertheless it was not a contention raised on this appeal based on Morales's clarification in the cited footnote in his opening brief.  Morales cannot raise this new argument for the first time in his reply brief, as he appears to. (*American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453.)

The one year statute of limitations on giving notice of all *potential* disciplinary sanctions (§ 3304, subd. (d)(1)) is to be distinguished from the 30 day time limit imposed on the statement of all *actual* discipline which is determined to be imposed, contained in section 3304, subdivision (f), also discussed in the text below.

[11]     The parties also disagree on whether this litigation should name the Department or the County of Los Angeles as the defendant; Morales sued both.  The County is the proper entity, but as all issues arise out of actions involving the Department, we use that descriptor in this opinion.

to attaining substantial justice among the parties.' [Citation.]" (*Heckendorn v. City of San Marino* (1986) 42 Cal.3d 481, 486.)

"It is not the ordinary function of a demurrer to test the truth of the plaintiff's allegations or the accuracy with which he describes the defendant's conduct. A demurrer tests only the legal sufficiency of the pleading. [Citation.]" (*Committee On Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 213-214.) "[T]he question of plaintiff's ability to prove [the pleading's] allegations, or the possible difficulty in making such proof does not concern the reviewing court . . . ." (*Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496.) On appeal, "[t]he judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citations.]" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

"Generally it is an abuse of discretion to sustain a demurrer without leave to amend if there is any reasonable possibility that the defect can be cured by amendment. [Citation.]" (*Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636.) When we review a demurrer "sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment; if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.]" (*Blank v. Kirwan, supra,* 39 Cal.3d at 318.) "The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Ibid*; *Cedar Fair, L.P. v. City of Santa Clara* (2011) 194 Cal.App.4th 1150, 1158-1159.)

### B. Judicial Notice

The defendants filed separate requests for judicial notice in support of their respective demurrers: the Department to the first cause of action of the first amended complaint, and the individual defendants to the second cause of action to the second amended complaint. We now consider these requests with respect to the Department's demurrer to the first cause of action. In part IV (B)(i) of this opinion, we discuss an additional issue that arises from the trial court's treatment of the documents offered for

8

judicial notice in connection with the individual defendants' demurrer to the second cause of action.

The Department's requests for judicial notice attached copies of its arming policy (the Arming Policy), the memorandum of understanding between the Department and the union representing deputy probation officers (the MOU), and Commission Rule 2 (focusing on Rules 2.7 and 2.49, each defining the term "demotion").  After Morales objected to the lack of authentication of these documents, the Department filed a second request for judicial notice containing the same materials, adding a request for judicial notice of the Recommended Decision on Morales's Commission appeal, and sought to authenticate all documents by the declaration of its trial counsel.

To support its separate and later demurrer to the second cause of action, the individual defendants filed a request for judicial notice which included all of the documents which had been submitted in connection with the Department's demurrer to the first cause of action, adding documents issued by the Commission after the hearing on the first demurrer.  These included the Commission's final ruling reducing the discipline imposed on Morales to a letter of reprimand.  The report of the *Skelly* hearing officer was also submitted.

Judicial notice is appropriately taken of regulations and legislative enactments of governmental entities, such as the County or its departments (Evid. Code § 452, subd. (b); see *Beresford Neighborhood Ass'n. v. City of San Mateo* (1989) 207 Cal.App.3d 1180, 1190) and of facts not reasonably subject to dispute.  (Evid. Code § 452, subd. (h).) Judicial notice may also be taken of  the existence of findings of fact made in other actions.  (See *Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1565.)  We review a trial court's evidentiary rulings for abuse of discretion.  (*McCoy v. Pacific Maritime Association* (2013) 216 Cal.App.4th 283, 295-296.)

The various rules of the Commission and the MOU are either official acts of governmental bodies or not reasonably subject to dispute.  The proceedings before the Commission are admissible for the fact of the proceeding and the rulings made by that

9

official body.  There also appears to be no dispute as to the facts determined by the *Skelly* hearing officer and by the Commission hearing officer; indeed, Morales relies on the recommendation of the Commission hearing officer (affirming the recommended reduction in discipline to a letter of reprimand) in his arguments.  We find no abuse of discretion by the trial court in granting the requests for judicial notice in connection with the two demurrers.

## IV.  DISCUSSION OF CONTENTIONS

A.                                                                                    First Cause of Action

"POBRA was enacted to 'maintain stable employer-employee relations and thereby assure effective law enforcement. [Citation.]'  [Citation.]  One of the rights afforded to a public safety officer is the right to an administrative appeal of any punitive action or denial of promotion on grounds other than merit.  (§ 3304, subd. (b).)  Punitive action is defined as 'any action that may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or *transfer for purposes of punishment*.'  (§ 3303, italics added.)"  (*Los Angeles Police Protective League v. City of Los Angeles* (2014) 232 Cal.App.4th 136, 141.)

i. *Allegation that Morales's reassignment was punitive*

The trial court accepted the Department's argument that removal of Morales from the SEU assignment, termination of his permission to carry a firearm and loss of salary above his base pay were not punitive, reasoning the actions the Department took in 2013 were all within its discretion; and it accepted the Department's argument that "[Morales] cannot compel a discretionary act."  It is not clear from the trial court's ruling whether it also found to be without merit Morales's contention that these 2013 actions were untimely, or that he had failed to exhaust his administrative remedies.  In briefing

10

mentioning this last contention of the Department, it is represented that the trial court's only comment was that Morales had failed to describe "any manner in which his administrative appeal was improperly conducted."

Morales clearly alleged his reassignment and the related personnel actions taken in 2013 were punitive in violation of POBRA; and further alleged these actions violated sections 3304, subdivision (a) and 3309.5, subdivision (a).[12] He specifically alleged in his first amended complaint that his bureau chief, Pettinicchio, and/or Director Guymon, advised him that the actions taken in March 2013 were taken specifically because of his disciplinary case which resulted in him being suspended for 10 days in 2011. He also alleged these actions were taken after the both the *Skelly* hearing officer and Commission hearing officer had recommended that his 10 day suspension without pay be reduced to a written reprimand. Notwithstanding the Department's argument that each of the actions taken in 2013 was within the discretion of the director of the Department, on demurrer, the allegation that this discretion was exercised improperly, viz., punitively, must be taken as true.

The allegations of this complaint distinguish it from those analyzed in *Los Angeles Police Protective League v. City of Los Angeles, supra,* 232 Cal.App.4th 136, upon which the Department relies. In contrast to the mere subjective belief discussed there (*id*. at 132), in this case the first amended complaint contains specific allegations that a department director told Morales he was being further disciplined expressly because of

---

[12]     Section 3304, subdivision (a) provides: "No public safety officer shall be subjected to punitive action, or denied promotion, or be threatened with any such treatment, because of the lawful exercise of the rights granted under this chapter, or the exercise of any rights under any existing administrative grievance procedure. [¶] Nothing in this section shall preclude a head of an agency from ordering a public safety officer to cooperate with other agencies involved in criminal investigations. If an officer fails to comply with such an order, the agency may officially charge him or her with insubordination."

Section 3309.5, subdivision (a) provides: "It shall be unlawful for any public safety department to deny or refuse to any public safety officer the rights and protections guaranteed to him or her by this chapter."

11

the prior incident. As that appellate court discussed, "[c]ourts have noted the difference between a transfer to *punish* deficient performance and to *compensate* for the deficient performance. [Citations.] Appellants argue, and we agree, that the court must '[l]ook through form to substance' in determining the agency's motivation in initiating an involuntary transfer. [Citation.] However, where there is no indication that the agency intends to punish the employee through a transfer, we cannot deem the transfer punitive solely because it was aimed at addressing an employee's performance in a particular assignment." (*Id*. at 142 [italics in original].)

In this case, as we review a general demurrer sustained without leave to amend, we must look to the complaint, "giving [it] a reasonable interpretation, reading it as a whole and its parts in their context." (*Aubry v. Tri-City Hospital Dist., supra*, 2 Cal.4th at 967, citing *Speegle v. Board of Fire Underwriters* (1946) 29 Cal.2d 34, 42.) We find in the first amended complaint specific allegations that the 2013 personnel actions were taken to further punish Morales. These allegations are sufficient to state a cause of action, which if established at trial could lead to a finding of violation of Morales's rights under POBRA.

ii. *Allegation of failure to exhaust administrative remedies*

We now consider the trial court's determination and the Department's contention that Morales was obligated to exhaust, but had not exhausted, his administrative grievance procedures. The first amended complaint, although inartfully pled, contains in its first cause of action a claim for "injunctive/mandamus relief." Mandamus will lie to review an allegation of an abuse of discretion. (*Cate v. California State Personnel Bd.* (2012) 204 Cal.App.4th 270, 283-284.) The case cited by the trial court in its ruling below, *Bautista v. County of Los Angeles* (2010) 190 Cal.App.4th 869 supports this position. There, the Los Angeles County Sheriff had terminated a deputy for violating department policies and engaging in certain inappropriate conduct. The Commission had approved his discharge. In reviewing the affirmance by the trial court of the order of that

12

department, our colleagues in Division Seven of this court explained: "'In a mandamus proceeding to review an administrative order, the determination of the penalty by the administrative body will not be disturbed unless there has been an abuse of its discretion.'" (See, e.,g., *Bautista v. County of Los Angeles, supra,* 190 Ca.App.4th at 879; *Skelly v. State Personnel Bd.*, *supra*, 15 Cal.3d at p. 217; *Deegan v. City of Mountain View* (1999) 72 Cal.App.4th 37, 46; *West Valley-Mission Community College Dist. v. Concepcion* (1993) 16 Cal.App.4th 1766, 1778–1779). "Neither an appellate court nor a trial court is free to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed." (*Barber v. State Personnel Bd.* (1976) 18 Cal.3d 395, 404.) "It is only in the exceptional case, when it is shown that reasonable minds cannot differ on the propriety of the penalty, that an abuse of discretion is shown." (*Bautista v. County of Los Angeles*, *supra,* 190 Cal.App.4th at 714.) We focus on the nature of the inquiry: *Whether there has been* an abuse of discretion. The error below was making that determination without first having had the proceeding required; here, trial on the cause of action.

As noted, it is unclear if the trial court found any merit in the Department's argument that Morales failed to exhaust his administrative remedies. If it did, this ruling was an abuse of discretion as section 3309.5, subdivision (c) expressly provides that: "The superior court shall have initial jurisdiction over any proceeding brought by any public safety officer against any public safety department for alleged violations of this chapter." As our Supreme Court explained in *Williams v. City of Los Angeles* (1988) 47 Cal.3d 195, 203: "The legislative history of section 3309.5 establishes, first, that the Legislature recognized that the act as originally adopted failed to specify any procedure by which an aggrieved officer could enforce the rights granted and, second, that by enacting section 3309.5, the Legislature intended to allow such officers 'immediate access to superior court to enforce their rights under the Act. . . .' [Citation.]" (*Barber v. California Dept. of Corrections and Rehabilitation* (2012) 203 Cal.App.4th 638, 664; *Mounger v. Gates* (1987) 193 Cal.App.3d 1248, 1254.)

13

iii. *Alleged violations of section 3304, subdivision (d)(1)*

Morales argued that the Department violated his rights under POBRA by not including in the section 3304, subdivision (d)(1) notice mailed to him on January 13, 2012, a statement that included all of the potential sanctions he might face, including those which were imposed in April 2013. He notes that this statute had been amended effective January 1, 2010, to require that each Letter of Intent or Notice of Adverse Action (one of which is required to be delivered to the peace office within a year of notice to his department of a potential basis for discipline) set out all of the potential discipline. Morales points out that the Legislature had amended this section to abrogate the holding of *Mays v. City of Los Angeles* (2008) 43 Cal.4th 313, 321-322 that no detailed notice of proposed discipline was required by the then-extant version of section 3304, subdivision (d). The amendment expanded section 3304, subdivision (d), and, in new subdivision (d)(1) expressly requires a detailed notice to the public safety officer of the "proposed discipline by a Letter of Intent or Notice of Adverse Action articulating the discipline that year, except as provided in paragraph (2)." (See *Neves v. California Dept. of Corrections & Rehabilitation* (2012) 203 Cal.App.4th 61, 68.)

There is no dispute in this case that the notice of discipline mailed to Morales in January 2012 referenced only the 10 day suspension. The Department argues that Morales's contention fails because the actions the Department took in 2013 were entirely discretionary and not connected to his earlier discipline. Morales argues in opposition that these actions were in fact punitive in nature and, to be imposed as discipline for his error in judgment in December 2010, as he alleges he was told, they must have been included in the section 3304, subdivision (d)(1) notice sent to him in January 2011, but

14

were not. We conclude Morales's stated claim, that the actions taken were untimely, was sufficient to survive demurrer.[13]

### iv. *Alleged violation of section 3304, subdivision (f)*

Morales alleged that the actions which the Department took in March 2013 were taken more than 30 days after it notified him of his 10 day suspension without pay, in June 2012. Section 3304, subdivision (f), requires that the agency inform the public safety officer of all of the discipline it intends to impose within 30 days of its decision to impose discipline. Thus, Morales alleges that the 2013 actions, which he was told were further disciplinary steps, were taken in violation of this section. The Department's response is that the 2013 actions were discretionary and therefore not subject to this statute. As the allegations of the complaint must be taken as true at this time, the trial court's ruling was incorrect for this additional reason.

### v. *POBRA sections 3305, 3306, and 3306.5*

The trial court also erred in ruling at this stage in the litigation that Morales did not state a claim for relief based on denial of his rights to review and comment on the contents of his personnel file under sections 3305, 3306 and 3306.5. These sections provide that a public safety officer has a right to read and sign each writing containing any comment adverse to his or her interest before it is placed in the personnel file (§ 3305); shall have 30 days within which to file a written response to each such comment placed in the file (§ 3306); and shall have the right to inspect that personnel file at reasonable times and at reasonable intervals and to request correction or removal from the file of writings mistakenly or unlawfully placed in it (§ 3306.5). Morales alleged violations of each of these sections.

---

[13]     We do not suggest that the first amended complaint is a model pleading. Nevertheless, the trial court erred in sustaining the demurrer on the grounds argued by the Department.

15

In sustaining the Department's general demurrer to these allegations, the trial court appears to have accepted the Department's factual argument that there had been sufficient compliance with each statute; thus the trial court wrote in its ruling: "Defendant contends that the allegations reveal that plaintiff knew about his disciplinary action (suspension) and thus had an opportunity to respond." This ruling is contrary to the plain requirements of these statutes as well as to the rules requiring that the court accept as true the allegations of the complaint at this initial stage of the proceedings. Nor do the documents of which the trial court properly took judicial notice invalidate Morales's allegations. The trial court's ruling on demurrer erroneously makes an evidentiary determination that there had been compliance when the complaint alleges the contrary, and it misapplies the statutes. Thus, the trial court's statement that "[Morales] failed to identify any other disciplinary document" misreads the statutes. The public safety officer is entitled by these statutes to *access* so he or she will know what his or her file contains, to comment on information in the file which is adverse to him or her and to a general right to inspect his or her file on reasonable notice. The public safety officer is not required to know the contents of the files in advance to view them as the trial court's ruling suggests. In addition, the trial court's ruling ignores that the public safety officer cannot identify a document when he or she has been denied access to the file in which it is contained in violation of section 3306.5.[14]

In sum, the trial court erred in sustaining the Department's demurrer to the first cause of action of the first amended complaint as it does state several valid claims for

---

[14] The additional contention regarding Morales's issuance of a subpoena to obtain access to his files is not supported by any record on this appeal. We therefore do not consider it. Nor do we consider other potential errors in the trial court's ruling as, on review of a general demurrer, if any cause of action is determined to have been stated, the reviewing court must reverse and return the matter to the trial court for further proceedings. (See *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 810 [general demurrer may be sustained only if the complaint fails to state a cause of action under any possible legal theory]; *Quelimane Co., Inc. v. Steward Title Guaranty. Co.* (1998) 19 Cal.4th 26, 38-39.)

relief. We do not opine on their eventual merit; only that they are sufficiently alleged to withstand the general demurrer asserted.[15]

B. Second Cause of Action

Morales filed his second amended complaint on January 13, 2014, after the trial court sustained with leave to amend the demurrer by Powers, Pettinicchio and Guymon to the first amended complaint. Morales added three paragraphs to the second cause of action of the newly amended complaint, apparently to address the trial court's ruling that the allegations in the first amended complaint had been insufficient to establish the legal claims for which redress was sought. Morales also realleged in identical language the entire first cause of action of his first amended complaint even though the Department's demurrer to that claim had been sustained without leave to amend. He incorporated those allegations as claims against the individual defendants in the first paragraph of the second cause of action. The three individual defendants filed a general demurrer and a motion to strike the punitive damages allegations of the second amended complaint, accompanied by two requests for judicial notice.[16]

i. *The trial court's ruling on judicial notice*

The trial court wrote in its tentative ruling (later adopted as its final ruling) that it was sustaining Morales's objections to the defendants' requests for judicial notice of several documents that had been filed with the Commission in connection with Morales's appeals and the Commission's rulings (the Commission documents), together with the Department's Arming Policy and the MOU. However, in the body of its ruling, the trial court stated that it was considering the documents "to the extent that the[ir] existence . . .

---

[15]     We do not discuss other reasons Morales advances to overturn the trial court's ruling; we have addressed only those referenced in its ruling on the general demurrer as they are sufficient to our ruling.

[16]     The trial court in its ruling, deemed moot the Motion to Strike.

contradict[s] the allegations" in the second amended complaint. We construe this statement as a ruling that it did take judicial notice of the documents for the indicated purpose. As discussed above, evidence rulings are reviewed for abuse of discretion. We find no abuse of discretion in this ruling.[17]

 ii. *Discussion of the demurrer*

The second cause of action of the second amended complaint is based on Morales's claims that these defendants denied Morales his due process rights protected by the Fifth and Fourteenth Amendments to the United States Constitution and by 42 U.S.C. section 1983 by their alleged denial of his rights under POBRA by (1) reassigning him from the SEU effective May 3, 2013 (with the related act of ending his authorization to carry a firearm and the consequential restriction on his potential to earn overtime) and (2) denying him his administrative appeal rights in 2012 and in 2013.[18] As discussed above, Morales contends that the 2013 reassignment constituted an untimely and punitive action, as it had not been imposed within the 30 day limit required by section 3304, subdivision (f), and that he was deprived of his administrative appeal hearing rights with respect to these actions. (See § 3304.5.) He further argues his reassignment in 2013 was punishment for speaking out then about overtime issues.

The fundamental issue with Morales's claims is that, based on the facts alleged in the complaint (of which there are but a scant few, notwithstanding that it is the third

---

[17] By the date of the hearing on the demurrer, the Commission had affirmed its hearing officer's decision that the appropriate action with respect to Morales's lapse of judgment should have been a written reprimand only. This ruling was in the record before the trial court prior to the hearing on the demurrer of the individual defendants.

[18] Morales also argues on appeal he properly stated a claim of violation of his rights protected by "Article I, section 10 of the United States Constitution." Morales never explains which of the several clauses of this section he considers to be applicable, and he does not present any argument concerning it in his opening brief. We deem this claim waived for failure to properly present it. (*Balboa Ins. Co. v. Aguirre* (1983) 149 Cal.App.3d 1002, 1010.)

iteration) and those of which this court takes judicial notice, the allegations are without basis and thus there is no manner in which the subject cause of action can be amended to state a claim for relief. With respect to his claim of denial of due process in the *Skelly* hearing proceedings, the judicially noticed record establishes that Morales was accorded full *Skelly* procedural rights in 2012. What Morales objects to concerning his *Skelly* proceeding is the Department's failure to reduce discipline imposed when it received the *Skelly* hearing officer's recommendation that discipline be limited to a written reprimand. That is not a violation of due process rights. And, while in his brief on appeal, Morales asserts that he was denied access to the "*Skelly* response memorandum," he did not make that allegation in this third iteration of the complaint, nor did he accept the trial court's offer to sustain this demurrer with leave to amend so that he could add relevant factual allegations, many of which appear for the first time in his briefs on appeal.[19]

Morales's second basis for his due process claim is that he was denied due process in connection with the appeal of his 2013 reassignment. Yet the record establishes that he timely filed an appeal from this action (in the same month, May 2013, in which it took effect) and, when he received notice from the Commission that his appeal was deficient, he took no steps to correct the deficiencies; nor has he alleged that he took any such steps. The second amended complaint also contains no allegations of who, how, or in what way any of the defendants deprived him of his administrative appeal rights with respect to his 2013 appeal.[20] Thus, based on the pleadings and on facts of which we take

---

[19] In addition to documents judicially noticed that demonstrate that Morales was not denied any procedural rights in the *Skelly* hearing process, certain allegations of the second amended complaint indicate Morales was provided substantial rights in the *Skelly* hearing process. For example, in paragraph 15 of the second amended complaint (which he incorporates into his second cause of action), Morales alleges he did invoke his due process rights, attended the *Skelly* hearing, and provided the hearing officer with his responses and arguments without interference.

[20] Morales omits from this cause of action any allegation that he asked anyone for any of the written materials he claims were not provided to him. This is an additional deficiency in his claims.

judicial notice, there is no viable claim which may be asserted in the second cause of action with respect to any denial of due process regarding the handling of his 2013 administrative appeal.[21]

Morales also claims a violation of due process due to the 2013 retaliating reassignment based on an allegation that it resulted from the exercise of his First Amendment rights by speaking out on the issue of overtime. His allegation is that he "spoke out on matters of public concern," doing so "as a private citizen." In addition to being imprecise about how he "spoke out," he fails to include key allegations. Thus, to state such a claim, Morales must allege that the protected conduct was a "substantial" or "motivating" factor for the employer's action. (*Mt. Healthy City School Dist. Bd. Of Educ. v. Doyle* (1977) 429 U.S. 274, 287.) This element is required as a matter of law. (*Ibid.*, citing *Village of Arlington Heights v. Metropolitan Housing Development Corp.* (1977) 429 U.S. 252, 270.) As there is no allegation that what he said was a substantial or motivating factor in the actions taken, this claim cannot survive demurrer. Nor is his claim that the subject about which he spoke was of public concern sufficiently stated to meet the test of *Gray v. County of Tulare* (1995) 32 Cal.App.4th 1079, 1089. As respondents argue, as alleged, Morales's concerns can only be characterized as addressing his individual personnel dispute and to be of no public relevance. He has not alleged more and we cannot find any basis to infer more than that which he had alleged. (See *ibid*.)

The trial court in *Bistawros v. Greenberg* (1987) 189 Cal.App.3d 189, sustained without leave to amend a demurrer based on records of which it took judicial notice, records which showed an absolute defense to the claim made in the complaint. We apply that ruling here as we are presented with a deficiently pled second cause of action in a

---

[21] Morales's Fifth Amendment due process right argument is also flawed. Morales has cited no case which extends the Fifth Amendment Due Process Clause to the states.

20

second amended complaint, the material allegations of which are established to be impossible of proof based on records which we judicially notice. (*Id.* at 192.)

We also note that Morales's counsel declined the trial court's invitation to sustain the instant demurrer with leave to amend. Had we concluded that the second cause of action might be viable, then we might have considered any showing by Morales as to how he might cure the defects in his pleading to state a viable claim for relief. (See e.g., *Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386 [a plaintiff may show to an appellate court in the first instance a basis for amendment that will cure a pleading defect].) We note in this regard that Morales has made no such showing and no such request of this court.

We find no abuse of discretion by the trial court in sustaining without leave to amend the individual defendants' general demurrer to the second cause of action of the second amended complaint.

# V. DISPOSITION

The ruling on the demurrer to the second cause of action of the second amended complaint is affirmed.  The ruling on the demurrer to the first cause of action of the first amended complaint is reversed and the matter is returned to the trial court for further proceedings.  The individual defendants and the plaintiff are awarded their respective costs on appeal.

GOODMAN, J.[*]

We concur:

MOSK, Acting P.J.

KRIEGLER, J.

---

[*]      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.